Rogelio Rangel
HERNANDEZ, Appellant,

v.

The STATE of Texas, Appellee.

No. 69649.

Court of Criminal Appeals of Texas,
En Banc.

June 29, 1988.
Rehearing Denied Sept. 21, 1988.

Jose Eduardo Pena, Hector Leal, Jr., Laredo, for appellant.

Julio A. Garcia, Dist. Atty., Jose A. Flores, Jr., Asst. Dist. Atty., Laredo, Robert Huttash, State's Atty., Austin, for the State.

## OPINION

TEAGUE, Judge.

After a change of venue from Webb County to Zapata County, Rogelio Rangel Hernandez, hereinafter appellant, was convicted by a jury of Capital Murder for intentionally causing the death of Jose Gerardo "Curly" Herrera, who was then employed as a detention officer at the Webb County Jail, a penal institution, while appellant was incarcerated on an unrelated charge, and his punishment assessed at death. See V.T.C.A., Penal Code, §§ 19.-03(a)(5) and 1.07(a)(26). Appeal to this Court is automatic. See Tex.R.App.Proc., Rule 40(b)(1).

■ In his sixty-seventh point of error, appellant contends that the evidence was insufficient to support conviction.[1] The record of trial establishes that appellant was one of several detainees in the Webb County Jail who, on February 3, 1986, attempted an escape from that facility. Appellant and at least two other prisoners were armed with five handguns that had been smuggled into the jail at appellant's request. Only two of the guns were large-caliber weapons (.38 caliber pistols). The other three handguns were .22 and .25 caliber weapons. When the deceased appeared on the floor to remove appellant for an interview with his attorney, he was shot and killed. No other jail personnel witnessed this event.

Jose de Jesus Benavides and Merced Martinez, two other detention officers rushing to investigate, were each shot several times by the appellant, who was then armed with a large-caliber revolver in each hand. Ruben Reyes, another detention officer, was also shot. The barrage of gunfire prevented law enforcement officers from entering the floor where appellant was located for some time. Eventually, after first threatening to kill other inmates, the appellant was persuaded to surrender and was thereafter taken into custody.

The record contains some forensic evidence from which it might be inferred that appellant was the only inmate to fire a gun during the episode. The strength of this inference is, however, subject to uncertainty because interpretation of the scientific

---

1. Appellant does not clearly articulate the offensive element or elements upon which the State's proof is thought by him to be deficient. From a reading of his brief, we are inclined to think that his complaint is twofold: (1) that he was not proven to have been the triggerman; and (2) that he was not proven to have acted intentionally or knowingly. We therefore address his sufficiency complaint from these two perspectives.

test upon which it was based does not rule out or render improbable a variety of other inferences. In short, while it is certain that the appellant did fire a pistol himself, it is not unlikely that other inmates did as well. Moreover, ballistics examination of the various weapons involved indicated that at least three were fired during the incident in question, suggesting that more than one inmate was responsible for the gunfire.

Without assessing the reliability of witness testimony or measuring its relative weight, which are matters solely within the jury's discretion, it is clear that the circumstances do support a rational conclusion of appellant's culpability as charged in the indictment. He was evidently responsible for procuring all the weapons involved and was seen to be in possession of both large-caliber revolvers immediately after the deceased was mortally wounded. The fatal shots were apparently fired from a large-caliber weapon, only two such weapons were delivered to inmates in the Webb County Jail prior to the incident in question, and only two were discovered in the facility afterwards. As a matter of the Webb County Jail policy, detention officers are not permitted to carry sidearms while on duty. Although these circumstances do not rule out the hypothesis that another detainee caused Officer Herrera's death, it is far more likely, based on the available evidence, that appellant was the one who killed him.

In the instant cause, however, we need not evaluate evidentiary sufficiency against a standard requiring exclusion of all outstanding reasonable hypotheses. Cf. *Carlsen v. State*, 654 S.W.2d 444 (Tex.Cr.App. 1983, on rehearing). The circumstantial evidence of guilt was reinforced with testimony of two oral admissions made by the appellant, in which he acknowledged shooting the deceased, Officer Herrera, in the head. The circumstantial evidence, summarized above, adequately corroborates this admission, establishing not only that the deceased was murdered but also that appellant was probably the killer.

Moreover, the mental culpability required for a capital murder offense was also proved with great enough certainty for due process and due course of law. As always, the mental condition of an accused is not readily susceptible of eyewitness identification. Rather, it must be inferred from the circumstances under which the prohibited act or omission was committed.

In the instant cause, events leading up to the killing and following hard upon it virtually compel an inference that the appellant acted with deliberation throughout his escape attempt. Of course, it is impossible to say with absolute certainty that his conscious objective was to kill, rather than merely to escape confinement. Moreover, it might even have been the case he was unaware that his conduct was reasonably certain to cause death, although his subsequent fusillade injuring three other jailers seems to preclude this possibility. What is most important, however, is that a finding of intentional and knowing murder is not only justified under these circumstances, but is also the most plausible explanation consistent with appellant's known conduct. Certainly the jury was not irrational in reaching this conclusion with a level of confidence surpassing reasonable doubt. See *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Therefore, appellant's sixty-seventh point of error is overruled.

In his first eight points of error, appellant complains that a number of prospective jurors were excluded from service pursuant to State challenges for cause in violation of the Sixth and Fourteenth Amendments to the United States Constitution, Article I, Section 10 of the Texas Constitution, and Article 1.05 of the Texas Code of Criminal Procedure. Specifically, he maintains that opposition to the death penalty, without more, does not constitute a basis for exclusion of prospective jurors, that the burden is upon the challenging party to demonstrate a sufficient basis for exclusion, and that the State failed to meet its burden with respect to the veniremen here in question. We agree.

If one thing is clear from our published opinions in this area of the law it is that potential jurors frequently misunderstand the questions put to them by attorneys during *voir dire*. The problem is often exacerbated by the questions themselves.

To illustrate, we set out the entire *voir dire* examination of Jose Mario Martinez, the subject of appellant's fourth point of error: [2]

QUESTIONS BY MR. GARCIA, DISTRICT ATTORNEY:

Q. Mr. Martinez, my name is Julio Garcia and I represent the State of Texas in this case, along with Mr. Rogelio Rios and Arturo Figueroa. Representing the defense is Mr. Eddie Pena, Hector Leal, Jr. and Lauro Benavides. They are all attorneys from Laredo, Texas. Mr. Martinez, this is a capital murder case for which the punishment is a mandatory type of punishment imposed by law, that is, either life imprisonment and/or death. Do you agree with that principle?

A. I don't know.

Q. You don't know what, sir?

A. I could not understand the questions.

Q. Do you agree with the principle that death can be a viable alternative as a form of punishment for a particular offense?

A. (No response.)

Q. Do you understand it, sir?

A. I don't understand it.

Q. Do you believe that death can or should be imposed as a penalty for the commission of some type of offense? [3]

A. No.

MR. GARCIA: Challenge for cause.

THE COURT: Any questions?

MR. PENA: Yes, your Honor.

THE COURT: Go ahead.

QUESTIONS BY MR. PENA, DEFENSE COUNSEL:

Q. Mr. Martinez, the mandatory punishment for capital murder is either life or death. The Court would instruct you that you have to listen to all the evidence and first decide whether the defendant is guilty. If you decide he is guilty of capital murder, the Court would instruct you to answer three special issues and, based on your answer to those issues, the Court would either assess life imprisonment or death. Could you follow those instructions? Could you listen to all of the evidence and then follow the Court's instructions in faithfully and truthfully answering the three special questions that appear on this poster I am pointing to?

(Pause while witness examines questions.)

THE COURT: Have you read them?

A. Yes, sir.

MR. PENA: He answered yes.

MR. GARCIA: No. He said yes, he finished reading the questions. Now ask him the question.

THE COURT: He said yes, sir, whatever that means. So ask him.

Q. What did you mean by your answer?

A. I read the questions.

Q. Now my question was whether your views on the death penalty would prevent you from following the Court's instructions and would prevent you from

---

**2.** Much the same analysis as follows applies to other veniremen excluded for cause at the State's urging in this case. For example, during oral argument the State conceded that venireman Guzman was not disqualified under *Witherspoon v. Illinois*, 391 U.S. 510, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968), and its progeny. Recently, in *Gray v. Mississippi*, 481 U.S. 648, 107 S.Ct. 2045, 95 L.Ed.2d 622 (1987), the United States Supreme Court reaffirmed its holding in *Davis v. Georgia*, 429 U.S. 122, 97 S.Ct. 399, 50 L.Ed.2d 339 (1976), that the improper exclusion of even one juror because of his general objections to the death penalty will render a death sentence unconstitutional. Accordingly, we need not sep-

arately discuss the exclusion of other veniremen discussed by appellant in his brief.

**3.** In light of what follows, it seems probable that Mr. Martinez did not fully comprehend the meaning of this question. Persons trained in the law, of course, would likely understand it to be an inquiry concerning the venireman's personal views on the death penalty, although it might also be interpreted as a quiz on Texas punishment law. However, for purposes of the present analysis, we are willing to assume that Mr. Martinez was categorically opposed to executing criminals, no matter what their offense.

truthfully and faithfully answering these special issues in accordance with the evidence. Would you do that, sir? [4]

A. I don't understand.

Q. Would you follow the Court's instructions and listen to the evidence and then answer these three special questions based on the evidence? If the Court instructed you to do that, could you do that?

A. Yes, sir.

MR. PENA: Pass the witness.

QUESTIONS BY MR. GARCIA, DISTRICT ATTORNEY:

Q. Mr. Martinez, did I misunderstand you when you said that you had some strong feelings against the death penalty? Didn't you say that?

A. I said no.

Q. No what?

A. I don't know what the death penalty is.[5]

Q. You don't know what the death penalty is?

A. No.

Q. That a man is put to death. His life is extinguished, terminated, it is finished by the legal method prescribed for by the laws of the State of Texas. That is the death penalty. Did I understand you correctly to say earlier, sir, that you have some strong feelings against the death penalty?

A. My answer was no when you asked me.

Q. Your answer was no, what?

A. I had no strong feelings.

Q. About what?

A. About the death penalty.

Q. Can you impose the death penalty?

A. What do you mean by impose? [6]

Q. Knowing that the Court is going to decide whether a man gets the death penalty and/or life imprisonment depending on how you answer these questions, can you take that jury box and answer these questions and set aside your feelings about the death penalty? [7]

A. No, sir.

Q. So your feelings against the death penalty are very strong, aren't they?

A. No.

Q. They are not strong at all? But you couldn't set aside those thoughts and answer these questions carefully, could you?

A. I can answer the questions, but—

Q. But you can't put a man to death?

A. No.

MR. GARCIA: Challenge for cause.

THE COURT: Any more questions?

MR. PENA: No, your Honor. He has indicated that he could still follow the Court's instructions.

THE COURT: I know what he stated. I've heard it. Do you have any more questions?

MR. PENA: No further questions.

THE COURT: Is the State still challenging?

MR. GARCIA: Yes, sir.

THE COURT: I accept the challenge.

MR. PENA: Your Honor, the defendant objects to the exclusion of this juror from the jury panel on the grounds that he is being excluded on a broader basis than that allowed by the United States Supreme Court in *Witherspoon v. Illinois*, in *Adams v. Texas*, and in *Wainwright v. Witt*, and the exclusion of this juror will constitute a violation of the defendant's right to a fair and impartial jury under the Sixth and Fourteenth Amendments under

---

4. At this point, it has not even been established that the venireman has any "views on the death penalty." Indeed, as it turns out later, he does not.

5. As incredible as this may seem, it does not evince an unwillingness or inability on the venireman's part to act as a juror in a capital case. The record contains nothing from which one might conclude that he is unskilled in the English language or mentally impaired in any way.

6. This response is surprisingly pertinent and illustrates the serious shortcomings in the State's *voir dire* examination of Mr. Martinez.

7. Utterly ignoring the fact that the venireman had just stated that he had "no strong feelings" about the death penalty, the prosecutor, ironically, wonders whether he can set those feelings aside.

Article 1, Section 10, of the Texas Constitutions, and under Article 105 [sic] of the Code of Criminal Procedure, and under Article 35.16 of the Code of Criminal Procedure.

THE COURT: It will be noted for the record. You may step down[.] [8]

*Witherspoon v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, 20 L.Ed.2d 776 (1968), prohibits exclusion for cause of any potential juror merely because he expresses conscientious scruples against, or general objections to, the death penalty. Under statutory capital sentencing procedures in which the jury is vested with broad discretion to make ultimate determinations of life and death, this rule ensures that no sentence of death will be imposed only by jurors disinclined to exercise their discretion against capital punishment.

*Adams v. Texas,* 448 U.S. 38, 100 S.Ct. 2521, 65 L.Ed.2d 581 (1980), prohibits exclusion for cause of a venireman merely because he is unable to take an oath that the mandatory sentence of death or life imprisonment, prescribed by the law of this State for those convicted of capital murder, "will not affect his deliberations on any issue of fact." See, V.T.C.A., Penal Code § 12.31(b). This rule ensures that no defendant will be executed based upon findings of fact returned by a jury[9] from which a venireman has been excluded who, while able to perform his duties in accordance with law, would nevertheless regard the matter with greater trepidation or gravity because death is a possible result.

*Adams* also suggested, and it has since been made clear, that the United States Constitution does not prohibit exclusion for cause of any venireman whose views about capital punishment would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath." *Adams,* at 448 U.S. 45, 100 S.Ct. 2526, 65 L.Ed.2d 589; *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985). Since this standard is meant to be "in accord with traditional reasons for excluding jurors and with the circumstances under which such determinations are made," *Witt,* at 105 S.Ct. 851, a whole body of case law in this State, previously thought inapplicable to jury selection from a special venire, has suddenly achieved much greater precedential value.

As in all criminal cases, the jury selection process is chiefly concerned with identifying fair and impartial jurors. *Stockton v. State,* 148 Tex.Cr.R. 360, 187 S.W.2d 86 (1945). The same rules for determining fairness and impartiality, including available statutory exceptions for bias and prejudice, are equally applicable in capital and noncapital cases.

■ In Texas, the State may challenge for cause any venireman who "has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment." Art. 35.16(b), subd. 3. See e.g. *Woolls v. State,* 665 S.W.2d 455 (Tex.Cr.App.1983); *Hawkins v. State,* 660 S.W.2d 65 (Tex.Cr.App.1983);

---

8. Appellant also filed a written objection to the exclusion of this venireman in the following terms:

"ROGELIO RANGEL HERNANDEZ, DEFENDANT, in the above-entitled and numbered cause, hereby objects to the exclusion from the jury by the Court of the prospective juror JOSE MARIO MARTINEZ on the grounds that such prospective juror is being improperly excluded from the jury based on conscientious scruples against the death penalty, such exclusion being on broader basis than that allowed by the ruling of the United States Supreme Court in the case of *Wainwright v. Illinois,* 391 U.S. 510, 88 S.Ct. 1770, [20 L.Ed.2d 776] (1968), in that the evidence does not show that said venireman's views about capital punishment would prevent or substantially impair the performance of his

duties in accordance with his instructions and the law, or that said prospective juror would automatically vote against the death penalty regardless of what the evidence at the trial shows. *Wainwright v. Witt* [469 U.S. 412], 105 S.Ct. 844 [83 L.Ed.2d 841] (1985)."

This objection was overruled in writing by the trial judge.

9. The United States Supreme Court puts it this way: "No sentence of death [may be] imposed by a jury from which such prospective jurors have been excluded." *Adams,* at 448 U.S. 51, 100 S.Ct. 2529, 65 L.Ed.2d 593. As we shall see, this choice of words represents a persistent and crucial misunderstanding of the Texas capital sentencing scheme by our nation's highest court.

*Bodde v. State*, 568 S.W.2d 344 (Tex.Cr. App.1978), cert. denied 440 U.S. 968, 99 S.Ct. 1520, 59 L.Ed.2d 784 (1979). All jurors have a legal duty to consider the entire range of punishment available for an offense, whenever they are called upon to assess punishment in a criminal action. Thus, it cannot be doubted that jurors are generally subject to challenge for cause unless they are able honestly to contemplate imposition of the most severe and least severe penalties prescribed by law for the offense in question.[10] *Moore v. State*, 542 S.W.2d 664 (Tex.Cr.App.1976), cert. denied 431 U.S. 949, 97 S.Ct. 2666, 53 L.Ed.2d 266 (1977); *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978), cert. denied 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979).

■ However, it is usually true that a venireman in any criminal case is not subject to exclusion for cause if he is able to set aside his bias or prejudice for purposes of trial and fairly to determine the issues submitted for his consideration, based upon the evidence and having due regard for the entire lawful range of punishment.[11] See e.g. *Williams v. State*, 622 S.W.2d 116 (Tex.Cr.App.1981), cert. denied 455 U.S. 1008, 102 S.Ct. 1646, 71 L.Ed.2d 876 (1982); *Williams v. State*, 565 S.W.2d 63 (Tex.Cr. App.1978). Accordingly, irrespective of his personal beliefs or opinions concerning the wisdom or propriety of a statute or statutory scheme, so long as these views do not, in the words of the Supreme Court, "prevent or substantially impair" him from discharging his duty, he may not be disqualified for cause. This precept is merely another way of expressing what has always been the general rule in this State. Only now, it applies equally and without qualification to capital cases.[12]

10. An infrequently cited but critically important passage from *Witherspoon*, supra at 391 U.S. 522, n. 21, 88 S.Ct. 1777, n. 21 (emphasis in original), reflects that a nearly identical notion was at work in that opinion:

The most that can be demanded of a venireman in this regard is that he be willing to *consider* all of the penalties provided by state law, and that he not be irrevocably committed, before the trial has begun, to vote against the penalty of death regardless of the facts and circumstances that might emerge in the course of the proceedings.

But for Art. 35.16(b), subd. 1, V.A.C.C.P., which authorizes a challenge for cause in Texas capital cases against any venireman with "conscientious scruples in regard to the infliction of the punishment of death for crime," the law in this State has never permitted exclusion for cause of any venireman solely because of his conscientious scruples in regard to infliction of the maximum or minimum punishment allowed by law for an offense. Thus, only in cases where the State sought the death penalty did the law of Texas expressly allow a challenge for cause based upon conscientious reservations concerning a legally available penalty for crime. Indeed, the statute law still does. The only effect of *Witherspoon*, therefore, was effectively to remove the exception from Texas law on constitutional grounds and to restore jury selection in capital cases to the same posture as it occupies in other criminal cases generally.

11. This inquiry is not required where certain biases are concerned, usually denominated "bias as a matter of law." See *Anderson v. State*, 633 S.W.2d 851 (Tex.Cr.App.1982). None, however, are implicated in the present case.

12. In fact, *Witherspoon* never held otherwise. The now famous footnote 21 appearing at 391 U.S. 522, 88 S.Ct. 1777, 20 L.Ed.2d 785 of the majority opinion in *Witherspoon*, reads in part:

[N]othing we say today bears upon the power of a State to execute a defendant sentenced to death by a jury from which the only veniremen who were in fact excluded for cause were those who made it unmistakably clear ... that they would *automatically* vote against the imposition of capital punishment without regard to any evidence that might be developed at the trial of the cause before them ... [emphasis in original]

Based upon this language, it was widely thought that *Witherspoon* created a constitutional ground for exclusion of jurors who would always vote against imposition of the death penalty. And it was but a short step to the erroneous conclusion that the United States Constitution guarantees prosecutors the right to successfully challenge such jurors.

But, as has been repeatedly emphasized in recent years, *Witherspoon* does not provide a constitutional ground for the exclusion of veniremen:

*Witherspoon* is not a ground for challenging any prospective juror. It is rather a limitation on the State's power to exclude ...

*Adams v. Texas*, 448 U.S. at 47–48, 100 S.Ct. at 2528.

The Court's holding focused only on circumstances under which prospective jurors could *not* be excluded; under Witherspoon's facts it was unnecessary to decide when they *could* be. *Wainwright v. Witt*, 469 U.S. at 422, 105 S.Ct. at 851 (emphasis in original).

Insofar as jurors may be called upon to decide questions of life and death, the Constitution

Nonetheless, the rule does work in a somewhat different way where capital murder is concerned, precisely because the jury's task in a capital case differs qualitatively from its task in every other criminal prosecution. It should go without saying that one cannot reasonably gauge the ability of a venireman to perform his duty until one has first determined what that duty is.

■ Unlike criminal juries generally, a capital jury is never called upon to assess punishment. In fact, nobody assesses punishment in a capital case. The law has predetermined what the punishment will be depending only on certain conditions. The jury, as factfinder, only determines whether those conditions exist. The judge then pronounces sentence as the law requires. Neither is vested with any discretion in this regard. Indeed, the discretion to execute or merely incarcerate one convicted of capital murder was purposefully taken from judge and jury alike by the Legislature of this State in order to meet the perceived constitutional requirements of *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972).[13]

■ The only discretion left to jurors is in the mitigating weight which they may assign to relevant evidence bearing upon the special issues. *Jurek v. State*, 522 S.W.2d 934 (Tex.Cr.App.1975), affirmed 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). Thus, to the extent that a juror's categorical rejection of the death penalty might influence him not to find beyond reasonable doubt a probability of future dangerousness, even given evidence which would be held sufficient by a person unopposed to capital punishment, he is eligible for jury service.[14] Likewise, one whose beliefs favoring the death penalty might influence him to more readily find a probability of future dangerousness is equally qualified for jury service in a capital case. See *Barefoot v. State*, 596 S.W.2d 875, 883 (Tex.Cr.App.1980), cert. denied, 453 U.S. 913, 101 S.Ct. 3146, 69 L.Ed.2d 996 (1981).[15]

does not prohibit the exclusion of those who are categorically unable to do so. But neither does it specifically authorize their exclusion. In brief, a State does no violence to the teaching of *Witherspoon* by deciding that a venireman who would never vote to impose the death penalty is still qualified for jury service.

If Art. 35.16(b), subd. 1, V.A.C.C.P. and V.T.C.A., Penal Code § 12.31(b), both of which are constitutionally deficient under *Witherspoon* and *Adams* respectively, are not considered, it is clear that the Texas capital sentencing strategy does not purport to exclude for cause jurors who are categorically unable to impose the penalty of death. But it does continue to authorize, as it always has, exclusion based upon a bias or prejudice against some phase of the law upon which the State is entitled to rely, regardless of whether or not the criminal action is for a capital offense. And it is the settled case law in this State that, for any criminal prosecution, a juror may be excluded for bias or prejudice against the law only when he is thereby rendered incapable either of obedience to the court's instructions or of an impartial verdict. This is no more than to say that he may be excluded when his views prevent or substantially impair him in the performance of his sworn duty as a juror.

Whether, under *Witherspoon*, it would have been permissible to exclude a capital venireman on this basis if his view of the death penalty rendered him incapable of obedience to the charge is now moot. But nothing in footnote 21, on its face, would have categorically prohibited such exclusion.

**13.** For a general discussion of the theoretically inharmonious relationship between *Witherspoon* and *Furman*, see White, *Witherspoon Revisited: Exploring the Tension Between Witherspoon and Furman*, 45 U.CIN.L.REV. 19 (1976).

**14.** The Supreme Court evidently recognized the truth of this proposition in *Adams* at 448 U.S. 50, 100 S.Ct. 2528, 65 L.Ed.2d 593:

Nor in our view would the Constitution permit the exclusion of jurors from the penalty phase of a Texas murder trial if they aver that they will honestly find the facts and answer the questions in the affirmative if they are convinced beyond reasonable doubt, but not otherwise, yet who frankly concede that the prospects of the death penalty may affect what their honest judgment of the facts will be or what they may deem to be a reasonable doubt.

See also, *Rougeau v. State*, 651 S.W.2d 739, 740 (Tex.Cr.App.1982).

**15.** In light of our holding herein, the theoretical underpinning of *Smith v. State*, 573 S.W.2d 763, 765 (Tex.Cr.App.1978), that:

... a juror's willingness to demand of the state that it prove each allegation submitted pursuant to Art. 37.071 beyond a reasonable doubt is not equivalent to an assertion that the juror will consider the full range of punishment for the offense in question

will not justify the result in that case. While the premise is certainly true, a juror need not be capable of that which is no part of his statutory

What discretion is left in our capital sentencing system lies here, in the determination of reasonable doubt and the weighing of evidence to support factual conclusions. No venireman who is able honestly to perform this function within the bounds of discretion permitted by law is subject to exclusion for cause, regardless of his personal beliefs concerning the propriety or desirability of capital punishment. He need not himself favor the penalty under any circumstances.[16]

Given the fact that, where a defendant has been found guilty of capital murder a juror does not assess punishment, but merely answers special issues, see Art. 37.071, V.A.C.C.P., it follows that a juror's inability to consider the entire range of punishment for capital murder, including the death penalty, does not necessarily prevent or substantially impair the performance of his duty, as it would in other criminal cases. This is not to say, of course, that capital veniremen are rendered ineligible for jury service whenever they do let the possibility of a death sentence "affect" their deliberations. *Adams*, supra, has made it clear enough that such jurors may not constitutionally be excluded for cause. And, apart from V.T.C.A., Penal Code § 12.31(b), it is entirely rational and fully consistent with the current structure of our capital sentencing scheme that a prospective juror simultaneously refuse to impose a death sentence under any circumstances and unconditionally agree to resolve issues of fact truthfully, even when he knows that his resolution of those issues in the affirmative will necessarily lead to a sentence of death.

■ In short, it is impermissible to exclude a venireman from jury service in a capital case either because he insists upon considering the possibility of a death sentence during his deliberations or because he refuses to consider it. This is the necessary consequence of our Legislature's decision not to entrust jurors with the duty or responsibility for assessing punishment in cases of capital murder.

It is, therefore, misleading to inquire of a venireman whether he could "impose" the death penalty under any circumstances. The persistent efforts to exclude jurors upon this basis only makes the job of this Court more difficult on appeal. Only when a juror is unable or substantially impaired in his ability to resolve the questions entrusted to him may he be excluded from jury service at the instance of a party. Such disability may arise from his personal beliefs regarding capital punishment, and for this reason the attorneys are entitled to inquire regarding those beliefs in a capital case. But they ought not to conduct this inquiry in such a way as to suggest to the juror that his statutory function will be to decide whether a man lives or dies.

Clearly, all jurors opposed to capital punishment face a moral dilemma. Depending upon the nature of their views, they may feel morally responsible for the death of a man even when they have done no more than resolve questions of fact. If so, their views may substantially impair or even prevent them from honestly resolving the issues. But it is their honesty which must be substantially impaired. A juror may not be excluded merely because there is difficulty in his resolving questions of fact, even when that difficulty is exacerbated by

---

duty, such as the assessment of punishment in a capital case. To the extent of any conflict, we therefore overrule the apparent holding of *Smith* and its progeny, including *Pierce v. State*, 604 S.W.2d 185 (Tex.Cr.App.1980), and *Cuevas v. State*, 575 S.W.2d 543 (Tex.Cr.App.1978). Cf. *Goodman v. State*, 701 S.W.2d 850, 857–859 (Tex.Cr.App.1985); *Phillips v. State*, 701 S.W.2d 875, 885 (Tex.Cr.App.1985).

16. The Supreme Court has said, and we have often repeated, that:

If the juror is to obey his oath and follow the law of Texas, *he must be willing not only to*

accept that in certain circumstances death is an acceptable penalty *but also to answer the statutory questions without conscious distortion or bias.*

*Adams,* supra at 448 U.S. 46, 100 S.Ct. 2527, 65 L.Ed.2d 590 (emphasis added).

The emphasized language is simply false. No juror violates his oath in this State by refusing to acknowledge that death is an acceptable penalty. Only if his beliefs might prevent him from honestly determining issues of fact entrusted to his judgment does he fail in his duty.

a sensitive conscience. Only when there is a substantial likelihood that he will balk at the task or falsify an answer should he be judged unqualified.

Moreover, jury service is an obligation of all qualified citizens. The law, not the citizen, prescribes the necessary qualifications, and no citizen is legally disqualified from jury service merely because his conscientious beliefs might be violated by such service. It follows that the law may require a juror to perform a task wherein there is a risk that he will be legally obliged by his oath to act in such a way that his own conscience is offended.

It is, therefore, imperative that veniremen not be misled by the questions put to them during voir dire. In particular, they should not be told or led to believe that, once qualified, they have an option not to take the oath of a juror, so as to avoid jury service altogether. They should not be told or led to believe that, once on a jury, they have an option to disobey their oath, so as to avoid imposition of the death penalty. And it should never be averred or intimated by an officer of the court that jury service will under no circumstances require them to violate their conscientious beliefs.

Any decision that a venireman is disqualified necessarily involves both findings of fact and conclusions of law. To the extent that it is a finding of fact, it represents a determination that the prospective juror is substantially impaired in his ability to serve in that capacity. We owe this conclusion the same deference on appeal as any other finding of fact, but no more. It is, therefore, appropriate that we articulate the standard according to which such findings should be reviewed by this Court.

It will not do simply to say that the question should be reviewed only for an "abuse of discretion." Judges have no discretion to exclude qualified jurors for cause. But they are obliged to weigh and consider the evidence in an effort to decide whether a potential juror is qualified in fact. The evidence in this context, of course, refers principally to the venireman's testimony, given under oath and usually subject to searching examination by the judge and the attorneys alike. That testimony must include answers reasonably tending to support a finding, under the correct legal standard, that the juror would be unable to do his job well enough if selected. Otherwise, the finding that he was unqualified will not be supported by the record. Our review, therefore, is to determine whether the evidence was sufficient to support the trial judge's implied finding of fact.

■ We have said in the past that some deference should be given to the ability of the trial judge to observe the demeanor of veniremen during jury selection. See e.g. *Garza v. State*, 622 S.W.2d 85, 92 (Tex.Cr. App.1981). Often, it is the task of factfinders to assess the credibility of witnesses, including the levels of confidence they express. No less in the case of a trial judge who must evaluate the qualifications of potential jurors. Particularly where a venireman is shown on the record to be genuinely noncommittal, vacillating, equivocal, or uncertain, we must make allowances for the fact that a judge, trying his qualifications for jury service, had an opportunity to observe his demeanor, intonation, and expression. But such imponderables should be kept in their proper perspective and are rarely dispositive of the issue. Only when a careful reading of all testimony and other evidence, if any, demonstrates an ambiguity that cannot fairly be resolved on the face of the record is it appropriate for this Court to conclude its review with deference to the trial judge.

■ Finally, it is the burden of the party seeking exclusion to demonstrate that such course is proper. See *Jackson v. State*, 548 S.W.2d 685, 697 (Tex.Cr.App.1977). We think the quantum of credible proof must preponderate in favor of exclusion to support the action.

We cannot emphasize too strongly that an "automatic[ ] vote against imposing the death penalty" does not disqualify a venireman. Questions to this effect miss the point, even though they might initially help to illuminate a prospective juror's attitude toward capital punishment. See also *Ex*

*parte Russell,* 720 S.W.2d 477, 487 (Tex.Cr. App.1986) (Clinton, J., dissenting).

▪ Given these considerations, we hold that venireman Martinez was erroneously excluded for cause from jury service in the instant case. It is apparent that he was never searchingly examined concerning the factual matters at issue in our State's capital sentencing strategy, nor did he ever indicate, either directly or circumstantially, that such issues would tax his moral or intellectual competence in the least. It is clear that neither the trial judge nor the advocates could conceivably have gleaned, from the questions asked or the answers given, any meaningful impression of Martinez's beliefs regarding capital punishment, let alone his ability to pass upon material questions of fact. Moreover, it is not even arguably possible that the gross deficiency of evidence to support any valid ground for exclusion, thus far brought to our attention or to the attention of the trial judge, could have been supplied by a sensory evaluation of Martinez's demeanor. At most, it seems that Mr. Martinez, a man evidently unfamiliar with criminal procedure in general and capital punishment in particular, is not able personally to kill another man. This circumstance hardly disqualifies him from jury service in the State of Texas, nor does it serve as an evidentiary substitute for honest, straightforward, and frank *voir dire* examination by the prosecutor. In short, if a party with the burden to show ground for exclusion asks misleading, incomplete, or cryptic questions, he does so at his own risk. Unless it appears from a venireman's responses, understood in light of the questions actually asked, that a *bona fide* ground for exclusion is adequately supported by the evidence, we will not hesitate to require that it be done over again in a new trial.

Viewing the testimony of venireman Martinez in a light most favorable to the finding of the trial judge, we are convinced that no rational factfinder, applying the correct legal standard, could have found by a preponderance of evidence that Martinez would be prevented or substantially impaired by his views on the death penalty from fully discharging the obligation of a Texas juror in a capital case according to his instructions and his oath. Therefore, the judgment of conviction and sentence of death in this case are reversed, and the cause is remanded to the trial court for further proceedings not inconsistent with this opinion.

DAVIS, McCORMICK and CAMPBELL, JJ., concur.

ONION, P.J., and MILLER and WHITE, JJ., dissent.

DUNCAN, J., not participating.