**Opinion filed December 31, 2020**



# In The

# Eleventh Court of Appeals

_____

## No. 11-18-00337-CR

_____

## HOLSTON BANKS, III, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 118th District Court**
**Howard County, Texas**
**Trial Court Cause No. 14870**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Holston Banks, III, of burglary of a habitation with the intent to commit the felony of aggravated robbery. *See* TEX. PENAL CODE ANN. §§ 29.03, 30.02 (West 2019). The jury assessed Appellant's punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a term of sixty years.

In four issues on appeal, Appellant asserts that the evidence was legally insufficient to support the verdict and that the trial court erred in denying Appellant's first amended motion to appoint a DNA expert, motion to change venue, and motion to suppress the search warrant for a DNA sample from Appellant. We affirm.

*Background Facts*

Around 3:30 a.m. on November 13, 2014, Josephine Ochoa was preparing to leave for work from her home in Big Spring. She went outside to begin warming up her vehicle, and she saw a person wearing all black clothing in front of her neighbor's house across the street. She then went back into her house to finish preparing for the day. Her eldest son, Joseph, was asleep in her bedroom, and her youngest son, Matthew, was asleep on the couch in the living room.

After she went back into the house and into her bedroom, she heard the front door slam shut. She called out to ask if anyone was there and demanded that they leave. After hearing no response, she went back to gathering her things. When she turned toward the doorway to the hall, a man dressed in all black was standing in the doorway with a gun pointed at her face.

Ochoa testified that she could see the intruder clearly because there was a lamp turned on next to him, illuminating his face. She testified that the intruder was a tall, "built," black man. Ochoa raised her hands into the air, and neither Ochoa nor the intruder initially said anything until Ochoa finally began to scream. Matthew woke up and saw the man pointing the gun at Ochoa. Matthew then jumped onto the intruder's back, at which point a fight ensued.

Matthew testified that he was punching the intruder and holding the intruder's arm in place while the intruder tried to aim the gun backwards at Matthew. During the fight, Matthew was hit on the nose, causing him to bleed. Joseph eventually woke up and joined in the fight. As the fight continued, Matthew and Joseph were eventually able to push the intruder out of the house. The fight resumed for a little

while longer outside of the house, when suddenly the fight stopped. The intruder stated that "[he] got the wrong house," and Matthew offered to let the intruder go if the intruder promised to leave and not hurt the family. The intruder agreed, shook Matthew's hand, and then left.

The family found a bloodstained meshy hair net (hereinafter "skullcap") on the floor of the porch. Matthew testified that he felt something similar on the intruder's head during the fight. After arriving on the scene, the police collected evidence, including the skullcap, statements from the family, and DNA samples from Matthew.

Samples of blood from two different stains found on the skullcap were sent to a lab for DNA testing, and the Combined DNA Information System (CODIS) returned a "CODIS hit" on Appellant, whose DNA was already in the system because he had previously been in prison. Based on the CODIS hit, police obtained a warrant to collect additional DNA samples from Appellant for further comparison.

A State DNA analyst compared the DNA from the blood found on the skullcap to the DNA taken from Appellant and Matthew. The results revealed that neither Appellant nor Matthew could be excluded as contributors. Appellant was then arrested and charged with burglary with the intent to commit an aggravated robbery. The jury convicted Appellant, and this appeal followed.

*Analysis*

In his first issue on appeal, Appellant contends that the evidence is insufficient to prove identity and intent to commit theft. We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the

essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we consider all the evidence admitted at trial, including pieces of evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton*, 235 S.W.3d at 778. When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly prove the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

An essential element to every crime is that the State must prove beyond a reasonable doubt that the defendant is the person who committed the crime charged.

4

*Johnson v. State*, 673 S.W.2d 190, 196 (Tex. Crim. App. 1984). Identity may be proven by direct or circumstantial evidence. *Earls v. State*, 707 S.W.2d 82, 85 (Tex. Crim. App. 1986).

Appellant requests this court to find as a matter of first impression that the DNA mixture evidence, standing alone, is insufficient to prove his identity as the perpetrator. However, such a holding is unnecessary because the DNA evidence did not stand alone to identify Appellant. As Appellant acknowledges, the DNA evidence was also accompanied by Ochoa's in-court identification of Appellant as the perpetrator. Additionally, the State presented evidence refuting Appellant's alibi.

Appellant first attempts to dismiss Ochoa's in-court identification of Appellant as "weak and impeached." On direct examination, Ochoa unequivocally identified Appellant as the intruder. On cross-examination, Ochoa admitted that she had failed to previously identify Appellant as the intruder when shown his photograph during a photo array a month after the incident occurred.

Generally, the testimony of a single eyewitness can be enough to support a conviction. *See Aguilar v. State*, 468 S.W.2d 75, 77 (Tex. Crim. App. 1971). Although Ochoa's prior failure to identify Appellant may have conflicted with her later in-court identification, "[t]he fact that the complaining witness had previously failed to identify [A]ppellant goes only to the weight to be given the identification evidence." *Young v. State*, 650 S.W.2d 457, 458 (Tex. App.—Houston [14th Dist.] 1982, no pet.) (citing *Wilson v. State*, 581 S.W.2d 661 (Tex. Crim. App. 1979)). The jury alone decides whether to believe eyewitness testimony, and we presume that the jury resolved any conflicts in the evidence in favor of the verdict. *Mosley v. State*, 983 S.W.2d 249, 254 (Tex. Crim. App. 1998). Viewed in the light most favorable to the verdict, the jury could have determined that Ochoa saw

Appellant's face during the incident and that she clearly identified Appellant in court as the perpetrator.

Appellant also asserts that the DNA mixture evidence is unreliable because one of the bloodstains found on the skullcap contained the presence of a third, unknown contributor. Appellant contends that this equally implicates the unknown individual as the perpetrator. According to the results, the first stain contained a DNA mixture of three individuals: Matthew, Appellant, and an unknown third party. The results revealed that it was 7.39 billion times more likely that Appellant was one of the contributors to the DNA in the skullcap. The second stain contained a DNA mixture of two individuals: Matthew and Appellant. The results for the second stain revealed that it was 70.1 quintillion times more likely that Appellant was one of the contributors. The unknown contributor's DNA from the first stain was not submitted to CODIS for comparison because there was an insufficient sample size from the unknown contributor to warrant sending it for a CODIS match.

However, the presence of Appellant's own DNA links him to the scene of the crime. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000) (DNA evidence on a cigarette butt found at the scene of a crime indicated the defendant's presence at crime scene). Moreover, the mere presence of a third, unknown contributor's DNA within the mixture profile does not exculpate Appellant. In *Brown v. State*, a mask left at the scene of a crime contained a DNA mixture of three individuals. *Brown v. State*, No. 02-19-00459-CR, 2020 WL 4689890, at *3 (Tex. App.—Fort Worth Aug. 13, 2020, pet. ref'd) (mem. op., not designated for publication). One profile was attributed to the appellant, and two others were unknown individuals. *Id.* The court held that "the presence of two unknown contributors in addition to [the appellant] to the DNA profile from the mask does not create any inference that [the appellant] did not commit the crime but instead only serves to 'muddy the waters' of the evidence against him." *Id.*

Again, it is the role of the jury, not this court, to tread through the "muddy waters" and weigh the evidence. *See Brooks*, 323 S.W.3d at 899. Although the holding in *Brown* was made in the context of postconviction DNA testing, the underlying principle remains applicable here. *See generally id.*; *Oliver v. State*, No. 14-09-00690-CR, 2010 WL 3307391, at *2 (Tex. App.—Houston [14th Dist.] Aug. 24, 2010, no pet.) (not designated for publication) (noting that DNA mixture evidence was admissible to prove identity where both the defendant's and an unknown third party's DNA were found on the mask left at the scene of the crime).

Although such evidence, alone, is certainly not conclusive of Appellant's guilt, neither does it exculpate him. Rather, it links Appellant to the scene of the crime, and the jury could draw reasonable inferences from it in assisting the jury's determination that Appellant, instead of the unknown contributor, committed the burglary.

The jury was also entitled to take into consideration the reliability and veracity of Appellant's alibi. Appellant's sister testified on his behalf, contending that Appellant could not have been in Big Spring at the time of the burglary because he was living with her in Arlington, Texas, from September to December of that year and because Appellant did not have a car. However, the State introduced testimony from police officers in Big Spring noting that they cited Appellant in Big Spring with traffic violations in late September and November of that year. Although this is not direct evidence that Appellant was present at Ochoa's house on November 13, it is circumstantial evidence that contradicts Appellant's alibi defense, thereby permitting the jury to reject it. *See Johnson v. State*, 176 S.W.3d 74, 78 (Tex. App.—Houston [1st Dist.] 2004, pet. ref'd) (The weight to be given alibi evidence is within the sole province of the jury because it turns on an evaluation of credibility and demeanor.).

Viewed in the light most favorable to the verdict, the evidence shows that Appellant was in Big Spring a little over a month before, and two weeks after, the crime—contrary to Appellant's alibi evidence. Appellant's DNA was found on the skullcap left behind by the perpetrator after the crime. Lastly, Ochoa saw Appellant's face during the commission of the crime and unequivocally identified Appellant in court as the perpetrator. Thus, a rational jury could have found beyond a reasonable doubt that Appellant was the perpetrator.

Appellant also contends that the evidence was insufficient to show an intent to commit theft. A person commits a burglary if a person enters a habitation without the consent of the owner and with the intent to commit a felony, theft, or assault. PENAL § 30.02(a). "[T]he gravamen of a burglary is the entry without the effective consent of the owner and with the requisite mental state." *Ex parte Cavazos*, 203 S.W.3d 333, 337 (Tex. Crim. App. 2006). "The offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed." *Id.*

The indictment charged Appellant with committing burglary of a habitation by entering Ochoa's residence without her effective consent with the intent to commit the felony offense of aggravated robbery; it also charged that Appellant used or exhibited a deadly weapon. Theft is a component of the offense of robbery. PENAL §§ 29.02, 29.03, 31.03. Generally, "the events of a burglary may imply the intent with which the burglar entered." *Joseph v. State*, 679 S.W.2d 728, 730 (Tex. App.—Houston [1st Dist.] 1984, no pet.). Intent to commit theft need not be proven by direct evidence, as it may be inferred from the circumstantial evidence presented. *Moreno v. State*, 702 S.W.2d 636, 641 (Tex. Crim. App. 1986), *overruled in part on other grounds by Hall v. State*, 225 S.W.3d 524 (Tex. Crim. App. 2007). Thus, in a prosecution for a burglary, the jury may infer the intent to commit theft from the

surrounding circumstances. *Lewis v. State*, 715 S.W.2d 655, 657 (Tex. Crim. App. 1986).

An entry made in the nighttime without consent is presumed to have been made with the intent to commit theft. *Mauldin v. State*, 628 S.W.2d 793, 795 (Tex. Crim. App. 1982); *Andrus v. State*, 495 S.W.3d 300, 306 (Tex. App.—Beaumont 2016, no pet.). The theft need not be effectuated, nor the object of the theft taken, in order to support a conviction for burglary. *Ortega v. State*, 626 S.W.2d 746, 749 (Tex. Crim. App. 1981); *see Ex parte Cavazos*, 203 S.W.3d at 337 (stating that, when entry is made with the intent to commit theft, the offense is complete once unlawful entry is made).

Viewed in the light most favorable to the verdict, Appellant entered Ochoa's home without her consent at 3:30 a.m. under the cover of darkness. Appellant was wearing all black; pointed a gun at Ochoa; and, before fleeing, stated, "I got the wrong house." A rational jury could have found beyond a reasonable doubt that Appellant entered Ochoa's habitation with the intent to commit theft. We overrule Appellant's first issue.

In his second issue, Appellant contends that the trial court erred in denying his request for additional funds for a DNA expert. Prior to trial, Appellant's trial counsel filed an ex parte motion to appoint a DNA expert. The trial court granted the motion and authorized up to $3,250 for pretrial expenses and an additional $2,000 of trial expenses for Appellant to hire the requested expert witness. On the fourth day of the five-day trial, however, Appellant's trial counsel filed an amended motion requesting the trial court to authorize an additional $6,000 for the DNA expert. Appellant's trial counsel explained that the appointed expert had sent correspondence to counsel the day before—refusing to testify at trial unless an additional $6,000 was provided. The trial court granted the motion in part by authorizing an additional $1,000. The trial court explained that the original amount

9

authorized was "fairly liberal" and that the expert did not communicate the need for additional funds until two days before the conclusion of trial.

Appellant asserts that, because of the importance of DNA evidence in the case, the trial court's denial of the requested additional funds left Appellant with no other alternative than to try the case without a DNA expert. He contends that the trial court's denial of all funds requested constituted an abuse of discretion. We disagree.

We review a trial court's ruling on an *Ake*[1] motion under an abuse of discretion standard. *Griffith v. State*, 983 S.W.2d 282, 287 (Tex. Crim. App. 1998). The authorization of additional funds for an indigent defendant is within the sound discretion of the trial court, and an abuse of discretion will not be found absent a showing of some specific need for the particular expert or how the defendant will be harmed if the funds are not approved. *See Castillo v. State*, 739 S.W.2d 280, 294 (Tex. Crim. App. 1987) (citing *Phillips v. State*, 701 S.W.2d 875, 894 (Tex. Crim. App. 1985), *overruled on other grounds by Hernandez v. State*, 757 S.W.2d 744, 751 n.15 (Tex. Crim. App. 1988)). Appellant bears the burden to show that the trial court abused its discretion. *See id.*

Upon a sufficient showing, an indigent defendant may be constitutionally entitled to the appointment of an expert at the State's expense under *Ake*. *See Ex parte Briggs*, 187 S.W.3d 458, 463, 468 (Tex. Crim. App. 2005) (noting that an *Ake* motion was available for court-provided funds to pay an expert for a defendant with retained counsel if the defendant is otherwise indigent). However, the State need not "purchase for the indigent defendant all the assistance that his wealthier counterpart might buy." *Ake*, 470 U.S. at 77; *see Ex parte Jimenez*, 364 S.W.3d 866, 877 (Tex. Crim. App. 2012). "[I]f the defendant makes a sufficient threshold

---

[1]*See Ake v. Oklahoma*, 470 U.S. 68 (1985).

showing of the need for expert assistance on a particular issue, the defendant is entitled to *access* to at least one expert." *Ex parte Jimenez*, 364 S.W.3d at 877 (emphasis added) (noting that *Ake* does not necessarily require that a defendant is entitled to an expert that will testify on his behalf but, rather, an expert who is available to assist defense counsel with presenting the defendant's case in the best light); *see Ake*, 470 U.S. at 77; *see also* TEX. CODE CRIM. PROC. ANN. arts. 26.05(d), (h), 26.052(f), (g) (West Supp. 2020).

Appellant contends that the trial court abused its discretion because it failed to authorize the additional amounts demanded by Appellant's expert. Appellant also contends that he was forced to continue trying the case without the benefit of testimony from the expert on whom he had been relying.

As noted in *Ex parte Jimenez*, the State is not required to provide an indigent defendant with an expert without a consideration for the cost charged by the expert. 364 S.W.3d at 876–77. However, if one agrees with Appellant's contention that the trial court was required to grant the request for additional funds because the expert demanded it, the trial court's discretion would be removed from the process. The trial court would be bound to authorize any future amounts an expert may unilaterally demand just to ensure that a defendant could proceed with that expert. The trial court does not abuse its discretion in refusing to grant an indigent defendant "a blank check in [order] to retain [an] expert." *Cadd v. State*, 587 S.W.2d 736, 739 (Tex. Crim. App. 1979).

Here, the trial court granted Appellant's original motion—which specifically requested the named expert but did not include an estimate of the expert's costs—and allowed for reimbursement of up to $5,250, an amount that the trial court believed more than adequate. The record does not reflect that Appellant objected to this amount at the time the motion was granted or that he provided any evidence that such an amount was unreasonable or inadequate. Afterwards, Appellant sought an

additional $6,000 in funds for the expert. Appellant presented this request only one day before the end of trial.

We conclude that the trial court did not abuse its discretion by not granting Appellant's request for an additional $6,000 for the DNA expert. The trial court noted its belief that the amount originally authorized was more than adequate. On top of that, the trial court authorized an additional $1,000. The trial court also expressed frustration that the expert sought these additional funds on "the day before the person is supposed to be here." Given the timing and amount of the request, the trial court did not abuse its discretion by declining to award an additional sum that was more than the amount originally authorized for the DNA expert. Furthermore, there is no showing that Appellant was not able to make use of the $6,250 authorized by the trial court for the DNA expert in presenting his defense. *See Ex parte Jimenez*, 364 S.W.3d at 877.

Presumably, Appellant had access to, and use of, the assistance of his expert all the way up to the day before the trial ended. Without more, Appellant has failed to show how the trial court's ruling constituted sufficient harm to Appellant. Therefore, the trial court did not abuse its discretion. We overrule Appellant's second issue.

In his third issue, Appellant contends that the trial court erred in denying his motion to change venue. We review a trial court's ruling on a motion to change venue for an abuse of discretion. *Gonzalez v. State*, 222 S.W.3d 446, 449 (Tex. Crim. App. 2007). We will not disturb the trial court's ruling unless it falls outside the zone of reasonable disagreement. *Id.* A trial court may grant a change of venue to a defendant if (1) "there exists in the county where the prosecution is commenced so great a prejudice against him" or (2) there is "a dangerous combination against him instigated by influential persons" that would prevent him from receiving a fair and impartial trial. CRIM. PROC. art. 31.03(a) (West 2006). The basis for sustaining

a change-of-venue challenge based on a dangerous combination "comes not from a widely held prejudice but from the actions of a small but influential or powerful group who are likely to influence in some manner the way in which the trial proceeds." *Ryser v. State*, 453 S.W.3d 17, 36 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (quoting George E. Dix & John M. Schmolesky, 42 TEXAS PRACTICE: CRIMINAL PRACTICE AND PROCEDURE § 30.11 (3d ed. 2011)). Appellant asserted at the hearing that he was primarily asserting that "there exists a dangerous combination against the Defendant instigated by influential persons, my client and his family is being clear that they believe that influential person is you." Appellant specifically directed these comments at the trial judge. In support of his motion, Appellant presented three nearly identical affidavits asserting that the trial judge harbored a bias against Appellant and his family. The affidavits discuss the family's involvement in multiple prior legal proceedings over which the trial judge presided. The affiants asserted that the trial judge and his staff engaged in numerous, specific instances of judicial misconduct against Appellant and his family. They asserted that the judge retaliated against Appellant and his family because they filed a lawsuit against the City of Big Spring and because the judge was "discriminating and being racist." Two of the affidavits additionally stated that the trial judge could not be impartial because Appellant's family previously filed complaints against the judge.

The State responded to the motion to change venue by filing controverting affidavits of county residents opining that Appellant could receive a fair trial in Howard County. After a hearing, the trial court denied the motion.

Appellant asserts on appeal that the trial court erred in denying the motion to change venue because the trial judge's bias against Appellant prevented Appellant from having a fair trial. We note at the outset that Appellant did not file a motion to recuse the trial judge. If Appellant had done so, Appellant could have invoked a procedure whereby the trial judge would have been required to refer the motion for

13

another judge to decide if he did not voluntarily recuse himself.  *See De Leon v. Aguilar*, 127 S.W.3d 1, 5 (Tex. Crim. App. 2004) (citing TEX. R. CIV. P. 18a(c)); *In re Amos*, 397 S.W.3d 309, 313–14 (Tex. App.—Dallas 2013, orig. proceeding).  A party who wishes to object to potential bias or prejudice from a presiding judge may seek recusal: a procedural device specifically designed to address such concerns. *See* TEX. R. CIV. P. 18a, 18b.  Instead, Appellant utilized the procedure for a change of venue—a procedure that is aimed at guaranteeing a fair trial by an impartial jury as opposed to a fair trial before an impartial trial judge.  *See Ryser*, 453 S.W.3d at 33.

Appellant premises his claim on appeal on *Bracy v. Gramley*, 520 U.S. 899 (1997).  In *Bracy*, the Supreme Court held that, under the Fourteenth Amendment's Due Process Clause, a criminal defendant is entitled to a trial "before a judge with no actual bias against the defendant or interest in the outcome of his particular case." *Bracy*, 520 U.S. at 905; *see* U.S. CONST. amend. XIV; *Brumit v. State*, 206 S.W.3d 639, 645 (Tex. Crim. App. 2006) ("Due process requires a neutral and detached hearing body or officer." (citing *Gagnon v. Scarpelli*, 411 U.S. 778, 786 (1973))). We first note that Appellant did not present a claim based on the Due Process Clause to the trial court in his motion to change venue.  Instead, he relied solely on the statutory ground set out in Article 31.03(a)(2) of a "dangerous combination." Accordingly, Appellant waived his *pretrial* constitutional claim by not presenting it to the trial court for consideration.  *See* TEX. R. APP. P. 33.1(a); *see also Curry v. State*, 910 S.W.2d 490, 496–97 (Tex. Crim. App. 1995) (addressing an Eighth Amendment claim).

Moreover, Appellant's reliance on *Bracy* is misplaced.  *Bracy* and *Brumit* apply to *posttrial* challenges to the manner in which the trial judge conducted a criminal trial.  *See Bracy*, 520 U.S. at 900–01; *Brumit*, 206 S.W.3d at 640; *see also Avilez v. State*, 333 S.W.3d 661, 674–75 (Tex. App.—Houston [1st Dist.] 2010, pet.

ref'd); *Dockstader v. State*, 233 S.W.3d 98, 108 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd). A challenge of this type requires a review of the entire trial record to determine whether there was a clear showing of bias in the manner in which the trial judge conducted the trial. *See Dockstader*, 233 S.W.3d at 108. To reverse a judgment on the ground of improper judicial conduct, we must find (1) that judicial impropriety was in fact committed during trial and (2) that there was probable prejudice to the complaining party. *See id.*

Here, Appellant's affidavits make allegations of unfair prejudice and misconduct from the trial judge occurring prior to trial. However, Appellant does not make any complaints of alleged bias by the trial judge that occurred at trial. Appellant's appellate counsel expressly states in his brief that "his review of the record did not uncover any instances where he believed [the trial judge] was acting with bias." Thus, Appellant has not shown that his trial was tainted by a trial judge that was biased against him under *Bracy* and *Brumit*. Accordingly, Appellant has not shown that a constitutional due process violation occurred.

Appellant has not cited any cases, and we have found none, requiring a trial court to grant a motion to change venue based upon an allegation that the trial judge is biased.[2] As presented by Appellant, the trial judge was placed in the position of having to consider an allegation that he was biased against Appellant. In the context of a motion to change venue, a trial court is given great deference in its ruling because it is in the best position to resolve conflicts in testimony and to evaluate the credibility of the witnesses. *Gonzalez*, 222 S.W.3d at 452. The record does not

---

[2]We have found at least two old cases that have held that prejudice of the trial judge, alone, is insufficient to require a change of venue because it is not a statutory basis for a change of venue. *See Gaines v. State*, 42 S.W. 385, 389 (Tex. Crim. App. 1897); *Johnson v. State*, 20 S.W. 985 (Tex. Crim. App. 1893). As noted in *Johnson*, the predecessor statute that the cases cited was virtually identical to Article 31.03(a). 20 S.W. at 986 n.2.

support a finding that the trial court abused its discretion by denying Appellant's motion to change venue. We overrule Appellant's third issue.

In his fourth issue, Appellant asserts that the trial court erred in denying his motion to suppress the search warrant for Appellant's DNA. During trial, Appellant orally moved to suppress DNA evidence obtained from him under the authority of a search warrant. Appellant asserted at trial that there were discrepancies between the testimony adduced at trial and the facts stated in the search warrant affidavit concerning the chain of custody for the skullcap. Appellant asserted at trial that the discrepancies rendered the search warrant affidavit "materially false" and that the trial court was required to suppress the DNA evidence obtained from Appellant by virtue of the warrant.

On appeal, Appellant does not assert that the search warrant affidavit was materially false. Instead, he contends that the trial court erred by denying the motion to suppress because the State never produced the search warrant or the supporting affidavit to the trial court for judicial inspection. Appellant contends that, because of this failure, the State did not satisfy its burden justifying the DNA search.

We note at the outset that at no time did Appellant present the complaint to the trial court that he is presenting on appeal: that the State was required to produce the search warrant and affidavit to the trial court for inspection. Thus, Appellant did not preserve the complaint that he presents on appeal for appellate review because he did not present it to the trial court for consideration. *See* TEX. R. APP. P. 33.1; *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) (explaining that the complaining party on appeal must bring to the trial court's attention the "very complaint that party is now making on appeal").

Moreover, we disagree that the argument that Appellant makes on appeal is a valid basis for overturning the trial court's denial of his motion to suppress the DNA evidence. We review a motion to suppress evidence under a bifurcated standard of

review.  *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007).  We give almost total deference to the trial court's rulings on questions of historical fact, as well as to applications of law to fact questions—particularly if they turn on evaluations of credibility and demeanor.  *Id.*  Questions that do not turn on an evaluation of credibility and demeanor are reviewed de novo.  *Id.*  Where a trial court does not enter any findings of fact when ruling on a defendant's motion to suppress, we must view the evidence "in the light most favorable to the trial court's ruling" and "assume that the trial court made implicit findings of fact that support its ruling as long as those findings are supported by the record."  *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).

Appellant's motion to suppress was in the nature of a *Franks* motion.  *See Franks v. Delaware*, 438 U.S. 154 (1978).  In *Franks*, the Supreme Court held that, if there is an affirmative misrepresentation in the warrant affidavit and the misrepresentation is material and necessary to establishing probable cause, then the warrant can be invalidated under the Fourth Amendment.  *Id.* at 155–56.  The presumption of validity regarding the magistrate's probable cause determination may be overcome if the defendant can show the presence of false statements in the search warrant affidavit that were either made deliberately or with reckless disregard for truth.  *Id.* at 171.  The defendant has the burden to prove that specific statements in the affidavit were false or that they were made with a reckless disregard for the truth.  *Id.* at 171–72.  If the defendant makes this showing, the challenged statements must be purged from the affidavit, and it is then up to the reviewing judge to determine whether probable cause exists absent the excised statements.  *Id.*; *Hyland v. State*, 574 S.W.3d 904, 911 (Tex. Crim. App. 2019).

Appellant bases his contention that the State was required to produce the search warrant and the supporting affidavit on *Etheridge v. State*, 903 S.W.2d 1 (Tex. Crim. App. 1994).  In *Etheridge*, the Texas Court of Criminal Appeals noted that, if

the State relies upon the existence of a warrant to justify an arrest, it is incumbent upon the State to produce the warrant and its supporting affidavit for inspection by the trial court. 903 S.W.2d at 19. This principle also applies when the State relies on a search warrant. *Moreno v. State*, 858 S.W.2d 453, 461 (Tex. Crim. App. 1993). This procedure allows the trial court to review the documents and determine whether probable cause exists and whether the accused's rights have been protected. *Etheridge*, 903 S.W.2d at 19; *Garrett v. State*, 791 S.W.2d 137, 140 (Tex. Crim. App. 1990). However, courts have excused the State from compliance with this production requirement if (1) the State introduces testimony from the magistrate who issued the warrant, the officer who presented the probable cause affidavit for the warrant, or another witness familiar with the factual basis for the warrant; (2) the accused has an opportunity to cross-examine the witness concerning the validity of the warrant; and (3) the trial court has an adequate opportunity to determine whether probable cause existed. *See De La O v. State*, 127 S.W.3d 799, 801 (Tex. App.— San Antonio 2003, pet. ref'd).

Here, although the State did not produce the warrant and affidavit at trial, the State fully satisfied each of the requirements to except them from the production requirement. The State introduced testimony not only from the officers who created, swore to, and presented the affidavit, but also testimony from the officers on the scene, as well as Ochoa, Matthew, and Joseph—witnesses who were all familiar with the factual basis for the warrant. Appellant had the opportunity to, and did, cross-examine these witnesses. Lastly, throughout the hearing, Appellant repeatedly referenced and articulated the information contained in the affidavit and warrant. Accordingly, the trial court had adequate evidence to determine the merits of Appellant's *Franks* motion without the State's physical production of the warrant and affidavit. Additionally, the actual warrant and supporting affidavit are not necessary for appellate review because Appellant does not challenge the merits of

the trial court's ruling on the motion to suppress.  We overrule Appellant's fourth issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

JOHN M. BAILEY

CHIEF JUSTICE

December 31, 2020

Do not publish.  *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Wright, S.C.J.[3]

Willson, J., not participating.

---

[3]Jim R. Wright, Senior Chief Justice (Retired), Court of Appeals, 11th District of Texas at Eastland, sitting by assignment.