

# NUMBER 13-07-00356-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

| | |
|---|---|
| JORGE ARELLANO A/K/A IVAN ANGEL ARELLANO A/K/A IVAN JORGE ARELLANO A/K/A GEORGE JAMES ARELLANO A/K/A IVAN MEZA, | Appellant, |
| v. | |
| THE STATE OF TEXAS, | Appellee. |

### On appeal from the 357th District Court of Cameron County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Garza, and Vela
### Memorandum Opinion by Justice Rodriguez

A jury convicted appellant, Jorge Arellano a/k/a Ivan Angel Arellano a/k/a Ivan Jorge

Arellano a/k/a George James Arellano a/k/a Ivan Meza, of three counts of intoxication

manslaughter, *see* TEX. PENAL CODE ANN. § 49.07 (Vernon Supp. 2008), and one count of intoxication assault. *See id.* § 49.08 (Vernon Supp. 2008). The trial court sentenced Arellano to four life sentences to run concurrently in the Texas Department of Criminal Justice-Institutional Division. By five issues, Arellano contends that the trial court: (1) erred by not swearing in the jury; (2) prevented him from presenting his defense; (3) failed to conduct a hearing on his motion for new trial; and (4) erred in denying his motion for mistrial. We affirm.[1]

## I. JURY'S OATH

By his first issue, Arellano argues the trial court committed reversible error by not properly swearing in the jury. If the record is silent, appellate rule 44.2(c)(2) mandates a presumption on appeal that the jury was properly empaneled and sworn. *Osteen v. State*, 642 S.W.2d 169, 171 (Tex. Crim. App. 1982); *Phillips v. State*, 701 S.W.2d 875, 889 (Tex. Crim. App. 1985) (en banc), *overruled on other grounds by Hernandez v. State*, 757 S.W.2d 744, 752 (Tex. Crim. App. 1988); *see Duffy v. State*, 567 S.W.2d 197, 201 (Tex. Crim. App. 1978) (en banc); *see also* TEX. R. APP. P. 44.2(c)(2).

Based on our review of the record, it appears that the jury was properly sworn. The record sets out that the trial court stated, "Ladies and gentlemen of the jury, you can remain standing if you would, please?" The jurors then stated in unison, "I do." Although a transcription of the oath is not part of the record, it appears that the jurors responded to the oath as required by article 35.22 of the code of criminal procedure. *See* TEX. CODE

---

[1] As this is a memorandum opinion, and the parties are familiar with the facts, we will not recite them here except as necessary to explain the Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

CRIM. PROC. ANN. art. 35.22 (Vernon 2006).[2] Also, the judgment recites that a jury was "duly selected, impaneled, and sworn according to the law. . . ."

Arellano argues that the matter of whether the jury was properly sworn was disputed in the trial court when defense counsel told the trial court, "You're going to swear in the jury," and the trial court responded, "I just did." Defense counsel then replied, "Okay." The verb "dispute" is defined as "to engage in argument." MERRIAM-WEBSTER ON-LINE DICTIONARY, *available at* http://www.merriam-webster.com/dictionary/dispute (last visited Jan. 7, 2009). Defense counsel neither engaged in argument, nor objected that the jury had not been properly sworn. *See Clay v. State*, 505 S.W.2d 882, 884-85 (Tex. Crim. App. 1974) (concluding that the matter of whether the jury was sworn was not made an issue in the trial court because appellants did not object). Instead, defense counsel appears to have conceded that the jury was sworn. Therefore, based on the record before us, we cannot conclude that the matter was disputed. We overrule Arellano's first issue.

## II. THEORY OF DEFENSE

By his second and third issues, Arellano contends the trial court prevented him from presenting his defensive theory—that he was not driving the vehicle when the collision occurred—by not allowing his expert witness to explain why he believed Libby Moncada was the driver of the vehicle. Arellano argues that it was reversible error for the trial court to sustain the State's objection to his proffered evidence and to instruct the jury to disregard it. We disagree.

---

[2] Under article 35.22 of the code of criminal procedure, the following oath must be administered when the jury has been selected: "You and each of you do solemnly swear that in the case of the State of Texas against the defendant, you will a true verdict render according to the law and the evidence, so help you God." TEX. CODE CRIM. PROC. ANN. art. 35.22 (Vernon 2006) (internal quotations omitted).

The trial court allowed Arellano's expert witness, Joe Owen Montgomery, to opine that Moncada was the driver of the vehicle. Arellano complains, however, that the trial court did not allow Montgomery to explain why he believed Moncada was the driver. After Montgomery stated that Moncada was the driver of the vehicle, defense counsel asked, "Why?" Montgomery's excluded response was that Montgomery believed Moncada was the driver because previous testimony revealed: (1) that the only broken window in the vehicle was the driver's window; and (2) that Moncada was the only person who had glass on her.

Arellano argues that the excluded testimony formed the basis of the expert's opinion. *See* TEX. R. EVID. 705(a) (providing that an expert "may disclose on direct examination . . . the underlying facts or data" that form the basis of his opinion). Assuming, without deciding, that the testimony should have been admitted, we conclude that the error, if any, was harmless. "It is within the trial court's discretion to refuse to allow cumulative testimony. If the import of improperly excluded evidence is conveyed to the trier of fact through other evidence, no error is shown." *Blalock v. State*, 728 S.W.2d 135, 137 (Tex. App.–Houston [14th Dist.] 1987, pet. ref'd); *see Prevo v. State*, 778 S.W.2d 520, 525 (Tex. App.–Corpus Christi 1989, pet. ref'd). Here, based on our review of the record, we conclude that the excluded testimony had been conveyed to the jury through previous evidence.[3] Therefore, we overrule Arellano's second and third issues.

---

[3] By his own admission, the expert stated that there had been testimony regarding the broken window and glass on Moncada. Furthermore, several witnesses described the condition of the vehicle after the crash, and the trial court admitted into evidence several pictures taken after the collision depicting the condition of the vehicle. Also, Moncada testified that, after the collision, she had cuts on her hands caused by broken glass, and the trial court admitted State's exhibits 50-55, pictures taken of Moncada's injuries. Finally, the trial court allowed Arellano's expert to testify that the cuts on Moncada's hand were "consistent with being struck by safety glass."

### III. HEARING ON MOTION FOR NEW TRIAL

In his fourth issue, Arellano contends that the trial court erred by failing to conduct a hearing on his motion for new trial. The State responds that Arellano was not entitled to a hearing because he did not timely present his motion to the trial court. We agree that the motion was not timely presented.

### A. Applicable Law

To be timely, a motion for new trial must be filed within thirty days of the date sentence was imposed or suspended in open court, and presented to the trial court within ten days of filing or within seventy-five days if the trial court grants permission. TEX. R. APP. P. 21.4, 21.6; *Price v. State*, 840 S.W.2d 694, 695 (Tex. App.–Corpus Christi 1992, pet. ref'd); *see Carranza v. State*, 960 S.W.2d 76, 79-80 (Tex. Crim. App. 1998) (en banc). The record must show that the movant actually delivered the motion to the trial court or otherwise brought it to the attention or actual notice of the trial court. *Carranza*, 960 S.W.2d at 80. Timely presentment is required before a trial court can proceed to the hearing and determination of a motion for new trial. *See Price*, 840 S.W.2d at 697.

### B. Presentment of Motion for New Trial

In this case, Arellano's motion for new trial was timely filed on June 15, 2007. The trial court never ruled on the motion, and it was thereafter overruled by operation of law. *See* TEX. R. APP. P. 21.8(a). Arellano argues that the motion was presented to the trial court because he filed it and the "filer then informed Court personnel that he had filed the motion." First, filing the motion alone is not sufficient to show presentment. *Carranza*, 960 S.W.2d at 78 (providing that the rule does not allow the "presentment" of motion by filing

it with the clerk); *Reyes v. State*, 849 S.W.2d 812, 815 (Tex. Crim. App. 1993) (en banc) (noting that "the filing of the motion alone is not sufficient to bring the motion to the trial judge's attention. The motion must be presented pursuant to Tex. R. App. Pro. Rule 31(c)."). Moreover, there is nothing in the record to show that appellant informed court personnel that he filed the motion or that he delivered the motion to the trial court. *See Carranza*, 960 S.W.2d at 79-80. Because the record does not show that Arellano actually delivered the motion to the trial court, or otherwise brought it to the attention of the trial court, or gave actual notice to the trial court, the motion had not been presented to the trial court. *See id.*; *Price*, 840 S.W.2d at 697. We therefore conclude that the trial court did not err by failing to conduct a hearing on appellant's motion for new trial. *See Birdwell v. State*, 996 S.W.2d 381, 384 (Tex. App.–Houston [14th Dist.] 1999, pet. ref'd) (providing that a trial court does not abuse its discretion by denying a motion for new trial without a hearing when the motion was not timely presented). We overrule Arellano's fourth issue.

### IV. DENIAL OF MOTION FOR MISTRIAL

By his fifth issue, Arellano contends that the trial court erred by denying his motion for mistrial. Specifically, Arellano argues that the trial court should have granted his motion for mistrial because of improper jury argument.

Arellano complains of the following comments made by the State during jury argument: "At first [defense counsel] . . . came up here and talked about Saul Arellano, Arellano's brother, being the driver. Ask yourselves, did they talk about that? Then after—." Defense counsel objected and moved for a mistrial, arguing that the State was "striking at Arellano over the shoulder of his defense counsel" by misrepresenting what had been argued throughout the case. The trial court sustained the objection and, upon

6

request by defense counsel, gave the jury a limiting instruction to disregard the comment made by the State. The trial court denied Arellano's motion for mistrial.

**A. Standard of Review and Applicable Law**

An appellate court must uphold the trial court's ruling, on a motion for mistrial, if it was within the zone of reasonable disagreement. *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). "Only in extreme circumstances, where the prejudice is incurable, will a mistrial be required." *Hawkins v. State*, 135 S.W.3d 72, 77 (Tex. Crim. App. 2004). The standard of review is abuse of discretion. *Wead*, 129 S.W.3d at 129. Assuming that the trial court was correct in sustaining Arellano's objection and providing the limiting instruction, the issue then is whether the refusal to grant the mistrial was an abuse of discretion. *See id.* ("An appellate court reviewing a trial court's ruling on a motion for mistrial must utilize an abuse of discretion standard of review.").

"[T]he question of whether a mistrial should have been granted involves most, if not all, of the same considerations that attend a harm analysis." *Hawkins*, 135 S.W.3d at 77. Therefore, in determining whether improper jury argument warrants a mistrial, we must balance the following factors: (1) the severity of the misconduct (the magnitude of the prejudicial effect of the prosecutor's remarks); (2) the measures adopted to cure the misconduct (the efficacy of any cautionary instruction by the judge); and (3) the certainty of conviction absent the misconduct (the strength of the evidence supporting the conviction). *Ramon v. State*, 159 S.W.3d 927, 929 (Tex. Crim. App. 2004) (citing *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998)).

7

## B. Analysis

Under the first factor, the severity of the misconduct is identified with the magnitude of the prejudicial effect of the prosecutor's remarks. *Hawkins*, 135 S.W.3d at 77. Arellano argues that, by its comment, the State impugned his defensive theory and essentially accused him of "trying to set up a smoke screen." We disagree and conclude that the comments were, at most, mildly inappropriate. The comments indicate that the State merely misstated the defense's theory by claiming that Arellano's defense was that Saul was the driver of the vehicle when in fact Arellano asserted that Moncada was the driver. Furthermore, the State's comments do not directly accuse the defense attorneys of lying, and the comments do not suggest that any evidence was manufactured. *Compare Dinkins v. State*, 894 S.W.2d 330, 357 (Tex. Crim. App. 2006) (en banc) (holding that the error was harmless even though the State's comments "cast aspersion on defense counsel's veracity with the jury") *with Gomez v. State*, 704 S.W.2d 770, 771-72 (Tex. Crim. App. 1985) (explaining that the prosecutor's jury argument accusing defense counsel of manufacturing evidence was not cured by an instruction to disregard and was thus reversible error). The first factor of the harm test weighs in favor of the State.

Turning to the second factor, the trial court took curative action. If a trial court instructs a jury to disregard, we presume that the jury followed the trial court's instruction. *Wesbrook v. State*, 29 S.W.3d 103, 121 (Tex. Crim. App. 2000). We presume that the trial court's instruction to disregard the State's comment was effective and cured the prejudicial effect, if any, caused by the State's remarks. *See Dinkins*, 894 S.W.2d at 357; *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000). Arellano has not pointed to anything

8

in the record indicating that the instruction was not effective. Therefore, this factor weighs heavily in favor of the State.

Finally, the third factor also weighs heavily in favor of the State. Moncada testified that she saw Arellano drink six or more beers at the party and took several "Jello shots." Moncada claimed that when they left the party, Arellano was "under the influence of alcohol. . . . He seemed like he was buzzing." She stated that when they left the party, Arellano was the driver, Saul was in the passenger seat, and she was in the back seat. According to Moncada, Arellano was traveling seventy-five miles per hour when he ran a stop sign, hit a bump, and crashed the vehicle. Saul also testified that Arellano was drinking beer at the party, that Arellano was driving the vehicle when the collision occurred, that Saul was in the passenger seat, and that Moncada was in the back seat. According to Saul, after passing a sports car, the vehicle driven by Arellano collided with another vehicle. Manuel Hector Garza, the person driving the sports car, also testified that Arellano was driving the vehicle. The State's expert witness, Dan Watling, opined that "[t]he driver of the Explorer caused this collision due to his excessive speed and disregard of the stop sign as a result of his intoxication." Finally, Vande Maele, M.D., testified that a blood toxicology screen revealed that Arellano had a blood alcohol level of 0.15 grams per deciliter—almost twice the legal limit in Texas.

Given the mildness of the comments, the trial court's curative measure, and the strength of the State's case, we conclude that any error was harmless. *See Mosley*, 983 S.W.2d at 260. We overrule Arellano's fifth issue.

9

## V. Conclusion

We affirm the trial court's judgment.

NELDA V. RODRIGUEZ
Justice

Do not publish.
Tex. R. App. P. 47.2(b).

Memorandum Opinion delivered and
filed this 8th day of January, 2009.

10