Kenneth Ray CLARK, Appellant,

v.

The STATE of Texas, Appellee.

No. 71462.

Court of Criminal Appeals of Texas,
En Banc.

May 22, 1996.

Rehearing Denied Sept. 18, 1996.

J. Rex Barnett, Elizabeth Horan, Fort Worth, for appellant.

Anne E. Swenson, Danielle A. LeGault, Asst. Dist. Attys. Fort Worth, Robert A. Huttash, State's Atty., Austin, for the State.

*OPINION*

CLINTON, Judge.

Appellant was convicted of the offense of capital murder. V.T.C.A. Penal Code, § 19.03. At the punishment phase of trial, the jury answered affirmatively the special issues set forth in former Article 37.071(b), V.A.C.C.P. The trial court then sentenced him to death as required by former Article 37.071(e), V.A.C.C.P. Direct appeal to this Court is automatic. Former Article 37.071(h), V.A.C.C.P. Appellant does not challenge sufficiency of the evidence in any respect. We will vacate the trial court's judgment and remand the cause for a new punishment hearing.

■ In point of error number fifteen, appellant contends the trial court erred in granting the State's challenge for cause against venireman Elaine Jones based on her religious scruples against the death penalty. Under *Wainwright v. Witt,* 469 U.S. 412, 105 S.Ct. 844, 83 L.Ed.2d 841 (1985), a venireman may be excluded for cause consistent with the Sixth Amendment to the United States Constitution when his views on capital punishment are such that they would "prevent or substantially impair the performance of his duties as a juror in accordance with his in-

structions and his oath." *Vuong v. State,* 830 S.W.2d 929, 942 (Tex.Cr.App.1992); *Moody v. State,* 827 S.W.2d 875, 888 (Tex.Cr.App. 1992); *Ellis v. State,* 726 S.W.2d 39, 44 (Tex. Cr.App.1986). Prospective jurors may not be excused merely because their beliefs about the death penalty might influence the decision-making process. *Vuong,* supra.

The voir dire of venireman Jones was unusually brief. The prosecutor never explained to her the procedure by which a capital accused, once found guilty of the offense, is sentenced. The following voir dire must be understood in that light: [1]

"[THE PROSECUTOR:] Are you morally against the death penalty?

[JONES:] Somewhat. It depends on the case.

Q. Okay. What are your views on the death penalty?

A. If I feel someone has committed a crime and evidence proves that they have, I am for it.

\* \* \* \* \* \*

Q. Question Number 41 [on the questionnaire] asks you, 'Which of the following best describes the way you personally feel about the death penalty?' And you checked, 'Generally against the death penalty'?

A. Yes.

Q. Okay. Maybe I need a little additional explanation on that.

A. Generally against, in that I just feel that, you know, I would have to listen and find out, do I really believe that the person committed the crime and whether or not, you know, what type of crime it was, did they really do it? If so, there are cases that I would feel that, yes, they should receive the death penalty. And there are cases that I think they shouldn't.

\* \* \* \* \* \*

Q. Is your general opposition to the death penalty something that is religious or moral, or what is it in you that triggers a general opposition to the death penalty?

A. More religious.

\* \* \* \* \* \*

Q. How does your religion in you trigger a general opposition to the death penalty?

A. More so, let God take care of it.

Q. If you were selected to serve on a jury in which the State was arguing for the death penalty, would you feel an obligation to let God take care of it rather than you yourself being able to vote such that the death penalty would be assessed to the death penalty [sic]?

A. Let God take care of it.

Q. So if you were on a jury—let's picture this for a second.

You are on a jury, and you found someone guilty of capital murder. And the way our trial works, if someone's found guilty of capital murder, we have a second phase to the trial in which the death penalty is an option that the jury could decide. Supposing you were serving on a jury and you had found a defendant guilty of capital murder, you found that they committed a capital murder, and one of the options is they receive the death penalty, would you find yourself wanting to vote in such a way so that the death penalty was not assessed so that God could take care of it?

A. Yes."

However, on questioning by defense counsel, Jones indicated that "where the facts would be so horrible and where the law permitted it," she could "vote for the death penalty" if she was instructed that that was "what the law was." And after appellant explained the legal procedures involved and that the venireman would not actually be called upon to assess punishment, but only to answer specific questions, the following transpired:

"[DEFENSE COUNSEL:] If you were chosen to serve as a juror in a capital murder case such as this one, would you be

---

1. The offense occurred on May 10, 1991, and trial commenced in February of 1992. The procedure applicable to the punishment phase of appellant's trial was therefore governed by Article 37.071 as it read prior to amendment by Acts 1991, ch. 838, §§ 1 & 5, pp. 2898–2901, eff. Sept. 1, 1991. Presumably any capital punishment proceeding on retrial will be conducted under current Article 37.0711, V.A.C.C.P. See Acts 1993, ch. 781, §§ 2 & 6, pp. 3060–3062, eff. Aug. 30, 1993.

able to listen and give fair consideration to all of the evidence that was presented by both the State and the Defendant?

[JONES:] Yes.

Q. And based on that, would you be able to follow the Court's instructions at the conclusion of the case and determine what in your mind would be a rightful decision?

A. Yes.

Q. And if that decision included finding that the Defendant was guilty, would you then be able to answer those questions up there without violating your conscience?

A. Yes.

Q. And even though you admittedly feel that there are some cases where capital punishment or death is a proper decision, there are a lot of cases that would be a capital case, perhaps, that you may not feel that way; is that correct?

A. Yes.

Q. And even though it might be a painful situation for you to serve in a capital murder case, do you think you could do that and would do that and follow the Court's instructions?

A. Yes, I would.

Q. And if those instructions resulted after you answered the questions or after the trial was completely over, if those answers of the questions resulted in the Defendant receiving the death penalty, would you be able to do that?

A. Yes."

After this, the trial court again explained to Jones the procedure at the punishment phase of a capital trial. Then, however, without further inquiry as to whether Jones could follow that procedure and answer the special issues honestly and without conscious distortion or bias, according to the evidence, the trial court granted the State's challenge. In doing so, the trial court opined that "[h]er religious scruples would affect her ability to be a fair and impartial juror[.]"

In *Riley v. State*, 889 S.W.2d 290 (Tex.Cr. App.1994) (Opinion on State's motion for rehearing), this Court reviewed a similar point of error. There venireman Brown had a far more deep-seated conscientious objection to the death penalty than did Jones in this cause. However, Brown also unequivocally maintained that, notwithstanding those objections, she could answer the punishment questions presented in accord with the evidence. The State contends, as it did in *Riley*, that this indicates a vacillating venireman and, therefore, the challenge must be upheld. We disagree with the State's assessment.

In *Riley* we held that, even though answering the punishment questions might violate her conscience, this did not indicate that venireman Brown would be substantially impaired in her duties, but only that her attitude might "affect" her deliberations. *Riley*, supra, at 300. Once the capital punishment procedure was explained to Brown, so long as she consistently affirmed that she could answer the questions in accordance with the evidence, "neither the difficulty she may have in doing so, nor the fact it might violate her conscience, renders her a 'vacillating' venireman in any material sense." *Id.*

■ ■ It is the burden of the challenging party to establish the venireman he has challenged for cause will be substantially impaired in his ability to follow the law. *Hernandez v. State*, 757 S.W.2d 744, 753 (Tex.Cr. App.1988) (Plurality opinion). Demonstrating that the venireman has conscientious scruples against the death penalty is not alone sufficient to meet the State's burden to show he will be substantially impaired from honestly answering the special issues of former Article 37.071(b) in accordance with the evidence. In order to meet that burden, the State should directly ask the question of the venireman whether his opposition to the death penalty is such as to cause him to answer one of the special issues in such a way as to assure a life sentence will be imposed, irrespective of what the evidence may be. Once that question is asked, the trial court's task is clear. If the venireman steadfastly maintains he will not consciously distort his answer to the special issues, he has shown no inability to follow the law, and may not be excused on State's challenge for cause. *Brown v. State*, 913 S.W.2d 577, at 580 (Tex.Cr.App.1996); *Riley v. State*, supra; *Hernandez*, supra. A venireman who stead-

fastly maintains he *will* consciously distort his answers *must* be excused on challenge for cause. *Brown,* supra. Under either contingency, the trial court has no real discretion, for the venireman has unequivocally shown, in the former, that he can follow the law, and in the latter, that he cannot. On the other hand, once the question is asked, the venireman who genuinely equivocates or vacillates in his answer may be excused for cause or not, depending on demeanor, intonation, or expression. Here the trial court's discretion comes fully into play. *Hernandez,* supra, at 753. However the trial court exercises its discretion under these circumstances, it will be upheld on appeal. *Brown,* supra; *Riley,* supra, at 299; *Perillo v. State,* 758 S.W.2d 567, 577 (Tex.Cr.App.1988).

 Under questioning by the State, Jones testified she was "somewhat" against the death penalty on moral grounds, but that her opposition was "more religious." She even acknowledged that she "would ... find [herself] wanting to vote in such a way so that the death penalty was not assessed so that God could take care of it." But all of this was before the operation of the special issues was explained to her. In fact, the State neither explained the capital punishment procedure to Jones nor made the critical inquiry whether her apparent preference to "let God take care of" deciding who should suffer the death penalty would affect her ability honestly to answer the special issues without conscious bias or distortion in accordance with the evidence. Only appellant's counsel even came close to asking that question. Moreover, when he did, Jones answered unequivocally that she could follow the court's instructions and answer the ques-

tions even if that resulted in imposition of the death penalty. Under these circumstances the trial court could not rationally have concluded that the State had discharged its burden to show that Jones was unable to abide by the statutory scheme, notwithstanding her preference to "let God" make that kind of ultimate decision. *Hernandez,* supra, at 754; *Riley,* supra, at 301.[2] The trial court thus abused its discretion to grant the State's challenge for cause against her.

Finally, this case is distinguishable from *Staley v. State,* 887 S.W.2d 885 (Tex.Cr.App. 1994). There is an important difference between venireman Jones in this cause and venireman Chandler in *Staley,* whom we held to be subject to a State's challenge for cause. *Id.,* at 893–94. It is true that, as in *Staley,* the trial court in this cause gave an additional jury instruction at the punishment phase to accommodate the Eighth Amendment limitations on imposition to the death penalty announced in *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989). We made it clear in *Staley* that the trial court did not violate the Sixth Amendment by granting a State's challenge for cause against a venireman who indicated he would always answer the Eighth Amendment special issue in such a way as to block imposition of the death penalty. Even in this context, however, mere opposition to the death penalty, even categorical opposition, does not alone suffice to justify granting the State's challenge for cause. The State must establish further that the venireman's opposition would cause him invariably to answer the Eighth Amendment issue in such a way as to insure that the sentence of death would not be imposed. See *Riley,* supra, at 301, n. 4.[3]

---

2. Moreover, that Jones' religious scruples "would affect her ability to be a fair and impartial juror," as the trial court concluded, even if supported by the record, would not necessarily render her exclusion acceptable under the Sixth Amendment. The trial court might simply have meant he believed "that the potentially lethal consequences of [Jones'] decision would invest [her] deliberations with greater seriousness and gravity or would involve [her] emotionally." *Adams v. Texas,* 448 U.S. 38, at 49, 100 S.Ct. 2521, at 2528, 65 L.Ed.2d 581, at 592 (1980). That would not be sufficient to insulate her exclusion from Sixth Amendment censure. *Id.,* U.S. at 50–51, S.Ct. at 2529, L.Ed.2d at 593.

3. Again, the most expedient method for the State to discharge its burden would be simply to ask the venireman point-blank whether his categorical opposition to the death penalty will cause him always to answer the *Penry* issue in such a way as to insure death will not be doled out, irrespective of the facts. The venireman who unswervingly maintains he will *not* invariably answer the *Penry* issue to prevent an execution may *not* be excused for cause, consistent with the Sixth Amendment. The venireman who maintains just as adamantly that he *will* must be excluded upon the State's challenge. And the venireman who genuinely equivocates or vacillates in his answer to this question is subject to

The State did not even approach asking Jones whether her less-than-categorical opposition to the death penalty was substantial enough to cause her to answer the *Penry* special issue so as to foreclose the death penalty under any circumstances. Therefore, the State failed to satisfy its burden to show Jones was challengeable for cause on the basis we recognized in *Staley* either. The trial court erred to grant the State's challenge for cause against venireman Jones.

We have recently held that error in granting a State's challenge for cause against a venireman for inability to follow some facet of the law applying only at the punishment phase of trial constitutes "error affecting punishment only," and does not alone call for reversal of the conviction, but only a remand for a new punishment proceeding under Article 44.29(c), V.A.C.C.P. *Ransom v. State*, 920 S.W.2d 288 (Tex.Cr.App.1996) (Opinion on State's motion for rehearing). Therefore, while we need not reach appellant's other points of error alleging error at the punishment phase of trial, or error during voir dire that only affects punishment, we must address appellant's points of error alleging error at the guilt/innocence phase of trial, in order to determine whether the cause should be reversed and remanded for a whole new trial.[4] There are two such points of error, neither of which presents reversible error.

■ In his fifth point of error appellant contends that the jury charge on guilt/innocence was fundamentally defective in that the definition of "reasonable doubt" was not included in the application paragraph. While appellant concedes that a proper definition of "reasonable doubt" was submitted, as required by *Geesa v. State*, 820 S.W.2d 154 (Tex.Cr.App.1991), he contends that the trial court committed fundamental error not to apply that definition to the facts of the case.

■ It is true that a theory of law must be applied to the facts of a case, even though it may be defined in the abstract portion of the charge. *Jones v. State*, 815 S.W.2d 667, 668–69 (Tex.Cr.App.1991); *Garrett v. State*, 749 S.W.2d 784 (Tex.Cr.App. 1986). However, the language of which appellant complains involves the definition of a concept. General instructions and definitional instructions need not be applied to the facts of a case. *Turpin v. State*, 606 S.W.2d 907, 910 (Tex.Cr.App.1980). The application paragraph plainly required that the State prove each element of the offense "beyond a reasonable doubt." This was sufficient to refer the jury to the definition of "reasonable doubt" appearing elsewhere in the jury charge,[5] and to require them to apply it in their deliberations at the guilt phase. This point of error is overruled.

■ In his sixth point of error appellant complains that the trial court erred in overruling a motion to suppress the clothing he was wearing at the time of his arrest. He contends the arrest was made *sans* warrant, and without justification for a warrantless

challenge for cause, at the trial court's discretion. See *Brown v. State*, supra.

4. In points of error one through four appellant complains that the trial court's jury instructions at the punishment phase of trial allowed the jury to assess the death penalty in violation of *Penry v. Lynaugh*, supra. Points of error seven through ten allege error in admitting certain evidence at the punishment phase of trial. Appellant contends in points of error eleven and twelve that Article 37.071 is invalid. In view of our remand for a new punishment hearing, we need not address these issues. In points of error thirteen and fourteen appellant claims the trial court erred to deny his challenges for cause against a pair of veniremen he contends harbored a bias in favor of the death penalty. And in points of error sixteen and seventeen he complains that trial court erred to deny challenges for cause against veniremen who would not consider cer-

tain evidence in mitigation of punishment. Like the error we reverse upon today, these alleged voir dire errors would only "affect" punishment in contemplation of our holding in *Ransom* on rehearing. Because we have sustained appellant's fifteenth point of error, and remand the cause for a new punishment hearing under Article 44.29(c), we need not reach these contentions either.

5. The *Geesa* definition appears after the application paragraph rather than before it. Although appellant alludes to this fact, he does not specifically complain of it. In any event, appellant did not object to this positioning at trial, and we are not inclined to believe that placing the definition after the application paragraph rather than before amounts to egregious error under *Almanza v. State*, 686 S.W.2d 157 (Tex.Cr.App.1985) (Opinion on rehearing).

arrest. As the fruit of this illegality, he contends, the clothing should have been suppressed pursuant to Article 38.23, V.A.C.C.P.

Appellant did not challenge the admissibility of the clothing until trial. Prior to trial, a hearing was held on his motion to suppress the product of an allegedly suggestive pretrial identification procedure. At that hearing, and during the trial itself in the jury's presence prior to the trial court's ruling on the admissibility of the clothing, the following facts were elicited pertaining to appellant's arrest: On May 11, 1991,[6] Officer D.B. Goley was called and told to meet other officers at the 900 block of Jefferson Street in Fort Worth. Once at that location, Goley was informed that they were serving an arrest warrant on appellant who was presently at a friend's house located at 920 E. Allen Street. At approximately 11:00 a.m., Goley noticed an individual matching appellant's description leave the house and walk in his direction. As appellant approached Goley's position, Goley stepped out of his car, identified himself, and arrested appellant. Subsequently, Officer Larry Steffler arrived on the scene with the physical warrant in hand. Steffler testified that appellant's son, Alzie Davis, had called "911" at 6:45 a.m. the morning of May 11, 1991, to report that his father had confessed to him to having committed the robbery and murder in this cause. Steffler stated that he obtained the necessary information from Davis in order to draft the arrest warrant, then immediately proceeded to find a magistrate to sign the warrant. At the suppression hearing, Steffler testified the warrant issued between 11:00 and 11:30 a.m. that same day. At trial he testified it issued between 10:30 and 11:00 a.m.

Appellant adduced no additional facts at the time he objected to the introduction of the clothing. He now suggests that the warrant had not issued at the time he was arrested, and that the arrest did not satisfy any of the justifications for warrantless arrest in Chapter 14 of the Code of Criminal Procedure. We disagree with appellant's premise. By his own testimony at the pretrial suppression hearing, appellant established that he was arrested sometime between 11:30 and 12:00 noon. This indicates that the warrant had been issued by the time appellant was arrested. That the warrant was not physically present before the arrest was made does not matter under Article 15.26, V.A.C.C.P.[7] Thus it appears that appellant did not satisfy his "initial burden" to establish that a warrantless seizure even occurred. Russell v. State, 717 S.W.2d 7, 9 (Tex.Cr.App.1986). We cannot say the trial court abused its discretion to admit the clothing. Consequently we overrule appellant's sixth point of error.

Finding no error requiring a new trial in this cause, we vacate the judgment of the trial court and remand the cause to that court for a new punishment proceeding pursuant to Article 44.29(c), supra.

MANSFIELD, J., dissents.

MEYERS, J., not participating.

---

6. The instant offense occurred on May 10, 1991.

7. Article 15.26 reads:
 "In executing a warrant of arrest, it shall always be made known to the accused under what authority the arrest is made. The warrant shall be executed by the arrest of the defendant. *The officer need not have the warrant in his possession at the time of the arrest, provided the warrant was issued under the provisions of this Code, but upon request he shall show the warrant to the defendant as soon as possible....*"
 Emphasis added.