

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————————

No. 02-24-00383-CR
No. 02-24-00384-CR

———————————————————

JAMES AARON ESMOND, Appellant

V.

THE STATE OF TEXAS

———————————————————

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court Nos. DC78-CR2024-0237-1, DC78-CR2024-0237-2

———————————————————

Before Sudderth, C.J.; Wallach and Walker, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

## I. Introduction

A jury concluded that Appellant James Aaron Esmond had sexually abused a nine-year-old child[1] and found Esmond guilty of indecency with a child by sexual contact, a second-degree felony, and aggravated sexual assault of a child, a first-degree felony. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), (d), 22.021(a), (e). After finding an enhancement allegation "true," the jury assessed his punishment for each offense at confinement for life,[2] and the trial court set the sentences to run consecutively. *See id.* § 3.03(b)(2) (providing for consecutive sentences); *see also id.* §§ 12.32, 12.42 (explaining punishment range and enhancement).

In three issues, Esmond complains that the trial court abused its discretion by granting the State's motion to strike venirepersons #17 and #41 for cause and by admitting extraneous offense evidence over his Rule 403 objection. Because the trial court did not abuse its discretion by striking the two venirepersons and because Esmond failed to preserve his remaining issue for our review, we affirm.

---

[1]To protect the minor child's anonymity, and because Esmond does not challenge the sufficiency of the evidence to support his convictions, we will not go into detail about the child or the abuse. *See* Tex. R. App. P. 9.8 cmt., 9.10(a)(3).

[2]The jury also assessed a $5,000 fine for the indecency conviction and a $10,000 fine for the aggravated-sexual-assault conviction. The trial court assessed an additional $100 fine during sentencing in each case under Code of Criminal Procedure Article 102.0186, for child abuse prevention, and Esmond does not challenge these assessments.

## II.  Jury Selection

In his first two issues, Esmond complains that the trial court abused its discretion by granting the State's strikes for cause of venirepersons #17 and #41.  The State responds that there was no abuse of discretion when both averred that they would hold the State to a higher burden than proof beyond a reasonable doubt.

### A. Applicable law

The State may properly challenge a juror for cause when the juror would hold the State to a higher standard than beyond a reasonable doubt.  *Coleman v. State*, 881 S.W.2d 344, 360 (Tex. Crim. App. 1994); *see* Tex. Code Crim. Proc. Ann. art. 35.16(b)(3) (stating that the State may make a challenge for cause "[t]hat [the potential juror] has a bias or prejudice against any phase of the law upon which the State is entitled to rely for conviction or punishment"); *see also Castillo v. State*, 913 S.W.2d 529, 533 n.1 (Tex. Crim. App. 1995) ("[A] venireman who requires proof to a level of confidence 'beyond all doubt' is . . . challengeable for cause on the basis of inability to follow the law.").

Before veniremembers may be excused for cause, the law must be explained to them, and they must be asked whether they can follow that law, regardless of their personal views.  *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).  The challenge's proponent has the burden of establishing that the challenge is proper and does not meet this burden until he or she has shown that the veniremember understood the law's requirements and could not overcome his or her prejudice well

enough to follow the law. *Id.*; *see Fuller v. State*, 363 S.W.3d 583, 586 (Tex. Crim. App. 2012) (explaining that a trial court abuses its discretion if it refuses to allow the defendant to voir dire venirepersons about what they think reasonable doubt means).[3]

Our review of decisions to grant challenges for cause is deferential to the trial court because of its superior position in evaluating the venireperson's demeanor and responses and the context and tone in which voir dire questions are asked and answered. *Rachal v. State*, 917 S.W.2d 799, 810 (Tex. Crim. App. 1996). When the potential juror's answers are vacillating, unclear, or even contradictory, the trial judge's superior point of view is particularly important and deserving of our deference. *Id.* And when the potential juror is persistently uncertain about an ability to follow the law, we will not second guess the trial court from a cold record. *Id.* Thus, we review the totality of the voir dire testimony and hold that the trial court abused its discretion only if the record does not support its decision. *Id.*; *see Hernandez v. State*, 390 S.W.3d 310, 317 (Tex. Crim. App. 2012) (stating that when a prospective juror's answers are vacillating, unclear, or contradictory, particular deference will be accorded to the trial

---

[3]In *Fuller*, the court explained that because the law does not specifically define what "proof beyond a reasonable doubt" means, defense counsel's inquiring whether a prospective juror understands that the burden must at least constitute a more onerous standard than "preponderance" and "clear and convincing" is "but the flip side of the inquiry that prosecutors engage in routinely during voir dire, designed to test whether prospective jurors will hold the State to the inappropriately onerous standard of proof beyond *all* doubt." 363 S.W.3d at 587. Such inquiries set reasonable doubt's lawful parameters and foster the selection of jurors who will not impose a standard on the State that they know for sure to be either too lenient (preponderance or clear-and-convincing) or too burdensome (all doubt). *Id.*

court's decision, which will be reversed "only if the record shows a clear abuse of discretion"); *Tucker v. State*, 183 S.W.3d 501, 512 (Tex. App.—Fort Worth 2005, no pet.) ("[I]n cases in which the venireperson is vacillating, almost total deference is given to the trial court's decision."); *see also Clark v. State*, 929 S.W.2d 5, 9 (Tex. Crim. App. 1996) (explaining that trial court's discretion "comes fully into play" when "[a] venireman . . . genuinely equivocates or vacillates in his answer" based on "demeanor, intonation, or expression").

## B. Background

From a pool of 60 potential jurors, both sides agreed to excuse venirepersons #22, #16, and #42 for reasons unrelated to this appeal.

During the State's voir dire, the prosecutor told the panel that the State's burden of proof was beyond a reasonable doubt and asked the panel, "If the State proves beyond a reasonable doubt that the defendant committed this offense by showing you each and every one of these things and you believe beyond a reasonable doubt that the defendant did all of these things, then what is the verdict?" The panel replied, "Guilty."

During the defense's voir dire, defense counsel explained that beyond a reasonable doubt was a higher standard than "clear and convincing" (the parental-rights-termination standard) because of the criminal case's liberty interest. Defense counsel stated, "Each individual person has to be convinced in his mind and in his heart that the State has proved their case beyond a reasonable doubt because it's a

personal and individual choice," and explained that there was a definition for "clear and convincing" but not for "proof beyond a reasonable doubt." He then stated, "Since we don't really know what that means to you, I would like to ask as many of you as I can . . . what does the term beyond a reasonable doubt mean to you?" Venireperson #17 defined beyond a reasonable doubt as "[t]hat there is no, no doubt in my mind after listening to everything from y'all that the person is either guilty or not guilty." Venireperson #41 defined it as "[a]fter hearing all the evidence, I have no question in my mind that -- guilty or not guilty."

After the defense's voir dire, the prosecutor raised a concern about potential jurors who had indicated that their standard would be "no doubt" in response to the defense's question. The prosecutor stated, "I don't think that they can serve on the jury if beyond a reasonable doubt to them means no doubt because that's different than what the law is." Defense counsel replied, "I think they're entitled to have their own personal view since there is no definition of proof beyond a reasonable doubt, period." The trial court then interjected, "But we know from the law, too, that it's not no doubt."

The parties agreed to strike the following venirepersons for cause—#5, #8, #10, #14, #19, #20, #21, #24, #27, #30, #31, #35, #37, #40, #43, #44, #49, #53, #54, #56, and #57—reducing the pool to 36 potential jurors. The prosecutor then

challenged for cause venirepersons #17, #41, and 11 others[4] based on their "no doubt" statements' during the defense's voir dire having elevated the State's burden. Defense counsel replied that he did not believe they were disqualified when their entire questions and answers were considered, stating, "[I]t's pretty clear that they were saying that they are reasonable people themselves and if they had a doubt, it would be reasonable." The trial court determined that they "need to ask some specific questions of some specific jurors about that specific issue."

During individual questioning, the prosecutor explained the following (with minor variations) to venirepersons #2, #4, #6, and #17:

> When [defense counsel] was asking for people's own thoughts about what beyond a reasonable doubt meant, you said, essentially, that you believed that, in your mind, it was no doubt whatsoever. The law says that the State only has to prove its case beyond a reasonable doubt. And that if the State meets its burden proves all of the elements and the juror believes those beyond all reasonable doubt, then the proper verdict is guilty. Can you follow the law?

Venireperson #2 said that he could follow the law. Venireperson #4 said, "I mean, no doubt would be preferable. It would be what I prefer," but when the prosecutor asked again if she could follow the law, she stated that she could. Venireperson #6 stated that he had understood the standard and just did not always have the right words. Defense counsel had no questions for these panelists, and at the conclusion of individual questioning, neither party objected to venirepersons #2, #4, and #6.

---

[4]Respectively, venirepersons #2, #4, #6, #23, #33, #38, #47, #50, #51, #58, and #60.

Regarding venireperson #17, however, we have set out in full the colloquy:

[Prosecutor]: When you were asked by the defense what your definition of what beyond a reasonable doubt was, you stated that you would have to have no doubt in your mind.

VENIREPERSON: Correct.

[Prosecutor]: The standard is that the State has to -- if the State proves its case beyond a reasonable doubt and the juror believes beyond a reasonable doubt all of the elements, all of the things listed on the screen about how you prove what an aggravated sexual assault is or how you prove what an indecency with a child is, then the State is entitled to a guilty verdict if the juror believes that beyond a reasonable doubt. Can you follow that standard or would you have to be at a -- would you have to be convinced beyond all doubt, without a single doubt in your mind? Do you want me to say that again?

VENIREPERSON: Let me take it in, please.

[Prosecutor]: Sure. Yeah.

VENIREPERSON: For me, I would have to have no doubt at all in my mind to show me or tell me everything, everything that I need to know so I can make a -- well, my honest and heart trusting, mind trusting opinion, voice.

[Prosecutor]: Sure.

VENIREPERSON: Does that -- did I, no, not answer it or I'm getting there?

[Prosecutor]: Yeah. No. We just need to continue discussing just a little bit to make sure that we understand each other.

VENIREPERSON: Okay. Okay.

[Prosecutor]: For most people to get to have no doubt in something, it would have to be something they witnessed or experienced themselves. Because, otherwise, you're in a courtroom, you're a juror

8

and you're hearing other people tell you what happened, and then you have to make an assessment based on that.

VENIREPERSON: Right.

[Prosecutor]: Right.

VENIREPERSON: The people up here. Correct. Okay.

[Prosecutor]: So the question is, would you -- when you say that you would have to have no doubt, right?

VENIREPERSON: Correct.

[Prosecutor]: The law says that you could have a doubt that was not reasonable, right? Like there could be two sides; one says one thing and the other says another, and you could believe beyond a reasonable doubt, right, that the State had proven its case.

VENIREPERSON: Okay.

[Prosecutor]: But that doesn't mean there's not anything that you're considering from the defense. Does that make any sense at all? Because 100 percent certainty would mean the defense and the State all agree what happened. There's, obviously, going to be -- in a trial, there's going to be some degree of disagreement that a juror is going to have to make a decision about.

VENIREPERSON: Correct. Okay. Correct.

[Prosecutor]: And so the question is when you're making that decision, would you hold the State to the standard of beyond a reasonable doubt or would you require us to prove it beyond no doubt whatsoever.

VENIREPERSON: I don't want any doubt [what]soever.

[Prosecutor]: Okay. So you would, in your -- your standard would be no doubt; is that correct?

VENIREPERSON: Yes, ma'am.

[Prosecutor]: Okay.

THE COURT: Any questions, [Defense counsel]?

[Defense counsel]: Yes, ma'am.

So just to clear this up a little bit, you know, if you personally witnessed something and saw for yourself and heard for yourself and felt for yourself, you would be a witness. You would never be a juror.

VENIREPERSON: Okay. I understand. I understand.

[Defense counsel]: As a juror, the question is can you listen to all of the facts and make a decision on what you find the true facts to be?

VENIREPERSON: Oh, yes. Okay.

[Defense counsel]: You can do that?

VENIREPERSON: Yes.

[Defense counsel]: Okay. So what I sense from you is that you feel like in order to do the right thing, you want to be 100 percent convinced that the State is correct in their case?

VENIREPERSON: Correct.

[Defense counsel]: Now, since you weren't personally there, you can't say 100 percent certain because you didn't see it or hear it or feel it for yourself?

VENIREPERSON: Correct.

[Defense counsel]: And I think that's what we're getting at is, can you make a decision not requiring you, in effect, to have actually have been there to actually decide the truth? Can you listen to the evidence?

VENIREPERSON: Yes.

[Defense counsel]: And pay attention to it?

10

VENIREPERSON: I do.

[Defense counsel]: All right. Okay. So far so good. And I think what you're trying to say is for you, you want to, in your own mind and heart, to be 100 percent convinced that the State is correct? So far so good?

VENIREPERSON: Correct. Correct.

[Defense counsel]: Even if you have something unresolved like, well, I don't know if somebody had a pink shirt or a gray shirt. There may be some doubt.

VENIREPERSON: Yes. Yes.

[Defense counsel]: There could be some doubt and you could still make a decision?

VENIREPERSON: Yes.

[Defense counsel]: All right. Thank you.

THE COURT: Thank you for your time. I'm sorry. Did you have any follow up?

[Prosecutor]: So just to be clear, though, you would still hold the State to no doubt; is that correct --

VENIREPERSON: Okay. When you say --

[Prosecutor]: -- because we were talking -- we talked about --

VENIREPERSON: When you say State, what are we --

[Prosecutor]: I am the State, the people proving the case. I'm sorry to interrupt.

VENIREPERSON: Okay. So because I was not there and I can't tell, like he said, the yellow or pink blouse or T-shirt, so -- okay. Now, I'm lost. Please address the question.

11

[Prosecutor]: Sure. So the standard is beyond a reasonable doubt, right, that's what the State has to prove its case, has to proof [sic] each and every element that the defendant committed this offense beyond a reasonable doubt. Sometimes we talk to folks and they say, it's great that that's what's required, but what I would demand is that I must know beyond any doubt whatsoever. And that's where -- what I thought that you had said. And it's okay if that's your -- if your standard is different than what the law is. We just need to know.

VENIREPERSON: Okay. I don't know if I'm going straight to the answer or going around it now. I want -- need to know everything about the situation.

[Prosecutor]: Can I ask you a follow-up on that?

VENIREPERSON: Please do.

[Prosecutor]: So you, as a juror, only get the evidence that's presented from that witness stand, right, so it would be impossible to get everything because, as I said earlier, there's going to be some disagreement in some of the facts and it may be about the color of a shirt, it might be where something happened.

VENIREPERSON: Okay.

[Prosecutor]: And the question is: So there could be a doubt that doesn't go to the elements or that doesn't go to -- that isn't based on reason, right? So the question is: Would you follow the standard of if the State proves its case beyond a reasonable doubt and every single one of the elements were there, but maybe we're missing something that you thought was important but the law doesn't say it, could you still convict the defendant or would that mean that you would have a hesitation because you didn't get everything that you wanted, you didn't get a total understanding of exactly where this happened or exactly what color the shirt was or something like that?

VENIREPERSON: Can I?

THE COURT: Yeah.

12

VENIREPERSON: When -- if selected, are jury members -- they're not allowed to say anything, obviously?

THE COURT: No, ma'am.

VENIREPERSON: So we have to go in a room and talk it out with the other peoples, right?

THE COURT: Yes.

VENIREPERSON: Oh, okay. So we can't -- me, I am not able to ask him -- can you ask that question --

THE COURT: You're just a true observer in the situation. Y'all just sit there and you sort of watch what unfolds and receive the evidence as it's given in the Court and that I admit into evidence. So you're only going to hear things in the courtroom. You are not interacting with anybody.

VENIREPERSON: Okay.

THE COURT: And so that's the question. After hearing all of that, you get back into that room after you've heard all of that evidence, can you follow the Court's instruction that -- of proof beyond a reasonable doubt versus proof beyond all doubt?

VENIREPERSON: Proof on a reasonable doubt, yeah. If you -- if you-all are unable to go all 101 proof, reasonable doubt, I would be able to answer. Is that -- no?

[Prosecutor]: No. That's -- that -- we really just want to know what you['re] feeling and what you're thinking, and so we appreciate your telling us that. Let me just -- because you've asked -- because you've said so many times that you want everything --

VENIREPERSON: Yeah.

[Prosecutor]: -- I want to be clear that you can make that decision even knowing that you may not know everything.

13

VENIREPERSON: I'm pretty sure I can address or make a decision, yes.

[Prosecutor]: And you'll hold us to the standard of beyond a reasonable doubt?

VENIREPERSON: I can.

[Prosecutor]: And you won't raise that standard to something else --

VENIREPERSON: No.

[Prosecutor]: -- or make it higher than that?

VENIREPERSON: So, in other words, I keep changing my mind. Is that what you're saying?

[Prosecutor]: Well, or hold the State to no doubt whatsoever. You could have a doubt that's not based on one of the elements.

VENIREPERSON: I can.

[Prosecutor]: You could have a doubt that's not based on reason. But if you believe beyond a reasonable doubt that the defendant did the elements of the offense, right, that we discussed yesterday --

VENIREPERSON: Okay. I understand. Okay.

[Prosecutor]: -- then the verdict is guilty. Are you comfortable with that?

VENIREPERSON: Yeah. I believe I am. I believe I am.

[Prosecutor]: Okay. Thank you.

THE COURT: Anything else?

[Defense counsel]: No questions.

THE COURT: All right. Thank you for your time.

14

At the conclusion of individual questioning, the prosecutor argued that venireperson #17 "said directly to [her] that she would . . . need to have no doubt at all in her mind." Defense counsel objected to venireperson #17's being struck for cause, stating, "I believe she's qualified. And I believe she's just giving her personal definition of what it would take to have proof beyond a reasonable doubt proved to her." The trial court granted the State's strike for cause as to venireperson #17.

Venireperson #23 was not as confused as venireperson #17 and ultimately—after discussion with both the prosecutor and defense counsel—stated that he agreed with the reasonable doubt standard. At the conclusion of individual questioning, the prosecutor argued that venireperson #23 had waffled too much to be qualified, and defense counsel replied, "I think the defendant is entitled to have every qualified juror. I think just the mere fact that he vacillated some isn't enough to disqualify him," and that

> with respect to all of these, I think they're all personally stating what it is for them personally, what it takes for them to be convinced beyond a reasonable doubt. And for that reason since they're talking about their own personal beliefs and their own personal standards and there is no definition of proof beyond a reasonable doubt permitted, that they're qualified.

The trial court opined that venireperson #23 was qualified and denied the State's motion to strike. At the conclusion of individual questioning, the prosecutor withdrew her objection to venireperson #33, who had "rehabbed herself."

Unlike venirepersons #23 and #33, after the prosecutor's explanation, venireperson #38 insisted that she would still require total certainty "because we're looking at life [and] . . . even if he gets on parole, he's [sic] still has to be monitored and that's the rest of his life." Because venireperson #38 also had a funeral to attend that Friday, defense counsel agreed to let her go.

And then venireperson #41 was brought in. We have set out in full the colloquy between venireperson #41, the prosecutor, defense counsel, and the trial court:

> [Prosecutor]: Thank you, sir. When the defense was asking what your definition of beyond a reasonable doubt was, I believe that you said you would have to be absolutely certain.
>
> VENIREPERSON: Right. I mean, you have to have clarity in your mind. You know, where are we going to stand? And, you know, you've got to weigh the good and bad, you know, just like a scale. And if one weighs more than the other, it's not a contra situation. You don't have -- you don't go over here and put your conscious [sic] in somebody's life. You know what I'm saying? I mean, the evidence says what it does.
>
> [Prosecutor]: So the standard is that the State has to prove beyond a reasonable doubt --
>
> VENIREPERSON: Right.
>
> [Prosecutor]: -- that the defendant committed the offense of aggravated sexual assault?
>
> VENIREPERSON: Right.
>
> [Prosecutor]: It sounds to me like you might have a slightly higher standard. That in your mind, it wouldn't be beyond a reasonable doubt, but you would want to be absolutely certain?

16

VENIREPERSON: Yes. Because this is somebody's life, you know. And if he just did the assault, what if it was murder, you know? You go over here and put somebody in jail for -- on a death penalty and they're innocent, you know, you just murdered somebody. I couldn't handle that.

[Prosecutor]: I don't have anything further.

THE COURT: Any questions, [Defense counsel]?

[Defense counsel]: So I think the gut question is, when you said one more than the other, you would weigh all of the evidence?

VENIREPERSON: Yes.

[Defense counsel]: And pay attention to both sides?

VENIREPERSON: Uh-huh.

[Defense counsel]: And make a decision in good conscience?

VENIREPERSON: Right.

[Defense counsel]: Where I think there may be some confusion is in the term proof beyond a reasonable doubt.

VENIREPERSON: Right.

[Defense counsel]: Part of it is because it's -- we cannot define it.

VENIREPERSON: Right.

[Defense counsel]: We're forbidden from doing that --

VENIREPERSON: Uh-huh.

[Defense counsel]: -- so we have to rely on what a jury thinks. All I can tell you about that is there is a general agreement, that doesn't mean beyond all possible doubt, in the sense that something could say, well, the aliens came in here so an alien did it. So there's no UFOs. I

17

mean, we're not talking about somebody that says a UFO came in and really did the crime other than the accused. And I'm talking in general.

VENIREPERSON: Right.

[Defense counsel]: So any doubt that you have, has to be based on reason. You have to have some reasonable doubt to say, wait a minute, they didn't prove it.

VENIREPERSON: Right.

[Defense counsel]: If your doubt is something like this, one witness comes in and says the robber had a green shirt, and the other witness comes in and says the robber had a red shirt, but they both agree it's the same person, it would be unreasonable to say I'm acquitting because they couldn't agree as to what color of shirt?

VENIREPERSON: Right.

[Defense counsel]: Do you see that?

VENIREPERSON: Right.

[Defense counsel]: That's an unreasonable doubt?

VENIREPERSON: Right.

[Defense counsel]: Now, you're not trying to hold the State to where they have to remove all doubt, including unreasonable doubt; is that correct?

VENIREPERSON: Yes.

[Defense counsel]: So you would hold the State only to its proper burden of prove beyond a reasonable doubt?

VENIREPERSON: I would have to. I mean, that's actually -- I mean, human nature will tell you.

[Defense counsel]: I've got it. Okay. Thank you.

18

[Prosecutor]: But to be clear, you would have to be absolutely certain?

VENIREPERSON: Yes.

[Prosecutor]: Nothing further.

At the conclusion of individual questioning, the prosecutor objected to venireperson #41 because "he said he would need to be absolutely certain" when she questioned him. Defense counsel replied that he believed venireperson #41 was qualified, stating, "Well, again, Your Honor, I think my baseline objection is that these people [are] all stating their own personal belief of what it takes to be satisfied beyond a reasonable doubt and to not outright disqualify them." The trial court struck venireperson #41 for cause.

As to venirepersons #47, #50, #51, and #58, at the conclusion of individual questioning, during which defense counsel asked no questions, the prosecutor withdrew her objections. But venireperson #60 stated that for his conscience, he "would have to be completely convinced." Defense counsel then attempted to rehabilitate him, but when the prosecutor asked him, "[W]ould you need this case to be proven 100 percent?" he replied, "I really would." At the conclusion of individual questioning, the prosecutor reiterated that venireperson #60 "said that he needed to be convinced and needs 100 percent," and defense counsel again argued that "these jurors are all talking about their own personally held beliefs about what proof beyond a reasonable doubt is and what it would take for them to be convinced beyond a

19

reasonable doubt as opposed to holding the State to a higher standard." The trial court struck venireperson #60.

At the conclusion of individual questioning, the strikes by agreement—venireperson #38—and strikes for cause—venirepersons #17, #41, and #60—reduced the pool to 32. After a break, the parties exercised their peremptory strikes, and the last panel member selected for the jury was venireperson #39, putting venireperson #41 outside of the strike zone of potential jurors.

## C. Analysis

In his first issue, Esmond argues that the trial court abused its discretion by granting the State's strike for cause of venireperson #17 because her statements, which gave the allusion that she might require a greater burden, were shown during individual questioning to be the result of misapprehension or confusion. He claims that "after the confusion was cleared up," venireperson #17 confirmed conformity with the law or was adequately rehabilitated during individual questioning. In his second issue, he complains that the trial court abused its discretion by granting the State's strike for cause of venireperson #41 because the State failed to properly follow the requirement that the law be explained to the venireperson and that he or she must be asked whether he or she can follow the law regardless of his or her personal views,[5]

---

[5]To the extent the prosecutor did not re-explain the law during the individual questioning of venireperson #41, defense counsel did so before the venireperson confirmed to the prosecutor that he would have to be "absolutely certain." Further, because Esmond cannot show that his actual jury was not "lawfully constituted," *see*

and venireperson #41's responses did not rise to the level that would support the strike when defense counsel properly rehabilitated him.

The State responds that the trial court did not abuse its discretion by granting the State's challenges for cause to venirepersons #17 and #41 because they averred on multiple occasions that they would hold the State to a higher burden of proof than beyond a reasonable doubt with vacillating, unclear, and contradictory answers.

As set out in full above, the State accurately characterizes both venirepersons as vacillating jurors. The trial court was in the best position to evaluate their demeanor and responses and to strike them for cause as unable to follow the law. Under the circumstances presented here, we conclude that the trial court did not abuse its discretion by striking them for cause, particularly in light of the venirepersons who the trial court determined had been rehabilitated based on the same grounds during individual questioning. *See Fruge v. State*, Nos. 03-14-00722-CR, 03-14-00723-CR, 03-14-00724-CR, 2015 WL 7969209, at *3 (Tex. App.—Austin Dec. 3, 2015, pet. ref'd) (mem. op., not designated for publication) (holding no abuse of discretion in granting challenge for cause when "panelist made contradictory and vacillating statements regarding the burden to which he would require the State to prove its case" and "some of those statements demonstrated that the panelist would require proof

---

*Jones v. State*, 982 S.W.2d 386, 394 (Tex. Crim. App. 1998), any such procedural deficiency was rendered harmless.

beyond all doubt before he could convict");[6] *Camacho v. State*, No. 07-02-0276-CR, 2003 WL 367878, at *3 (Tex. App.—Amarillo Feb. 20, 2003, no pet.) (not designated for publication) (concluding same when panelist "vacillated about whether she would require the State to prove its case beyond a reasonable doubt or beyond all doubt").[7] We overrule Esmond's first two issues without reaching his arguments about harm. *See* Tex. R. App. P. 47.1.

### III. Preservation of Error

In his third issue, Esmond argues that the trial court abused its discretion by admitting extraneous offense evidence of his juvenile conduct over his Rule 403 objection. The State responds that Esmond forfeited his Rule 403 complaint because

---

[6]In *Fruge*, the panelist stated that he "would have to be absolutely certain" in finding someone guilty because of the level of false convictions, and during individual questioning by the prosecutor, when asked if he could follow the legal standard or require 100% certainty, replied, "I would need to be pretty darn certain." 2015 WL 7969209, at *1–2. He said "yes," when the trial court followed up by asking, "[W]ould you need to be 100 percent certain?" but then also said he would not hold the State to a higher burden of proof than beyond a reasonable doubt when questioned by the defense. *Id.* at *2.

[7]In *Camacho*, the panelist first stated that she would require proof "beyond a shadow of a doubt," and then stated that she would have to know "beyond all doubt" before she could find someone guilty before the State challenged her for cause. 2003 WL 367878, at *2. Defense counsel then attempted to rehabilitate her by explaining that the standard was beyond a reasonable doubt and asking if she could follow that law. *Id.* The panelist then indicated that she did not understand before agreeing that she could follow what the trial judge told her to do. *Id.* at *2–3. The court held that despite her indication that she could convict if guilt were established beyond a reasonable doubt, it could not say that the trial court abused its discretion in excusing her from the panel in view of her earlier contradictory responses. *Id.* at *3.

although he raised it during the pretrial hearing on his motion in limine, he did not raise it during trial.[8]

Failure to preserve error at trial forfeits the later assertion of that error on appeal. *Fuller v. State*, 253 S.W.3d 220, 232 (Tex. Crim. App. 2008). A motion in limine is a preliminary matter and normally preserves nothing for appellate review. *Id.* For an error to be preserved as to the subject of a motion in limine, an objection must be made at the time the subject is raised during trial. *Id.* In *Fuller*, the appellant argued that his motion in limine to exclude an expert's testimony regarding future dangerousness preserved his issues for review, but he made no objections to the expert's testimony at trial. *Id.* Accordingly, the Court of Criminal Appeals held that he had waived for appellate review "any error associated with" the expert's testimony. *Id.* at 232–33; *see also Bittick v. State*, 680 S.W.3d 405, 422 (Tex. App.—Fort Worth 2023) (stating, under *Fuller*, that appellant's motion in limine did not preserve any error), *aff'd*, 707 S.W.3d 366 (Tex. Crim. App. 2024); *Graf v. State*, Nos. 02-23-00130-CR, 02-23-00131-CR. 02-23-00132-CR, 02-23-00133-CR, 02-23-00134-CR, 02-23-00135-CR, 02-23-00136-CR, 02-23-00137-CR, 02-23-00138-CR, 02-23-00139-CR, 02-23-00140-CR, 02-23-00141-CR, 2024 WL 3059556, at *11 (Tex. App.—Fort Worth

---

[8]Esmond appears to acknowledge the State's preservation concern by stating, "*To the extent that trial counsel preserved the [Rule 403] objection*, counsel for the defense adopted the objections" in *Perez v. State*, No. 02-19-00163-CR, 2020 WL 6788196, at *4 n.7 (Tex. App.—Fort Worth Nov. 19, 2020, pet. ref'd) (mem. op., not designated for publication), which was discussed at the motion-in-limine hearing. [Emphasis added.]

June 20, 2024, no pet.) (mem. op., not designated for publication) ("Although appellant filed a motion in limine regarding the extraneous-offense evidence—which the trial court granted—a motion in limine does not preserve a complaint that evidence was improperly admitted.").

The record reflects that Esmond did not raise his Rule 403 objection to the extraneous offense evidence at any point when it was admitted at trial, and the ruling on his motion in limine preserved nothing for us to review. *See Fuller*, 253 S.W.3d at 232–33; *Bittick*, 680 S.W.3d at 422; *Graf*, 2024 WL 3059556, at *11. Because Esmond failed to preserve this complaint, we overrule his third issue without reaching its merits. *See* Tex. R. App. P. 33.1.

## IV.  Conclusion

Having overruled all of Esmond's issues, we affirm the trial court's judgments.

/s/ Bonnie Sudderth

Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  August 7, 2025

24